**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA

v.

LEEANDER JEROME BLAKE,
*Defendant*.

Criminal No. ELH-06-0394
Civil No. ELH-24-00901

**MEMORANDUM OPINION**

This case is rooted in a carjacking and murder committed in 2002 by defendant Leeander Blake and his accomplice when Blake was just seventeen years of age. Initially, Blake was prosecuted by the State of Maryland. But, after the State dismissed the case, defendant was prosecuted in federal court.[1]

The case proceeded to a jury trial in June 2007. Blake was convicted of carjacking resulting in death, under 18 U.S.C. § 2119(3) (Count One); conspiracy to use and carry a firearm, in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Two); discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three); and first degree murder by firearm, as defined in 18 U.S.C. § 1111, in violation of 18 U.S.C. § 924(j) (Count Five).[2] Judge William Nickerson, to whom the case was originally assigned,

---

[1] Defendant was indicted on federal charges in August 2006. ECF 1. At that time, electronic filing was not yet in use. The first electronic filing appears on August 15, 2007, at ECF 62.

[2] Count Four charged second-degree murder. Following the district court's instruction, "the jury, having found Blake guilty on the charge of commission of felony murder while possessing a firearm, did not consider whether he was also guilty of the charge of commission of second-degree murder while possessing a firearm, which the government subsequently dismissed." *United States v. Blake,* 571 F.3d 331, 338 n.2 (4th Cir. 2009).

sentenced Blake in August 2007 to a total term of life imprisonment plus ten years.[3] The Fourth Circuit affirmed. *United States v. Blake*, 571 F.3d 331 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1104 (2010).

In January 2011, Blake filed his first motion to vacate under 28 U.S.C. § 2255. ECF 80. Judge Nickerson denied the motion by Memorandum and Order of January 10, 2012. ECF 84; ECF 85.

In 2017, Blake moved for authorization to file a second § 2255 motion. ECF 94. By Order dated February 22, 2017, and docketed in this case on March 6, 2017 (ECF 94), the Fourth Circuit granted the motion. Its ruling was based on a new rule of constitutional law announced in *Miller v. Alabama*, 567 U.S. 460 (2012), and made retroactive by *Montgomery v. Louisiana,* 577 U.S. 190 (2016). *Id.* Blake's second motion to vacate followed. ECF 96. Then, through appointed counsel (ECF 100), an amended motion to vacate was filed. ECF 101. It culminated in a joint motion by the parties to reduce Blake's life sentence to a total of forty years of imprisonment. ECF 123.

This Court granted the joint motion on May 20, 2019. ECF 127; *see* ECF 128 (Amended Judgment). In particular, as to Counts One and Five, the Court imposed concurrent terms of thirty years of imprisonment. As to Count Two, the Court imposed a concurrent sentence of twenty years. And, as to Count Three, the Court sentenced the defendant to a consecutive term of ten years of imprisonment. *Id.*

In June 2020, Blake, who was then self-represented, moved for compassionate release, pursuant to the First Step Act of 2018 ("FSA" or "2018 FSA"), 18 U.S.C. § 3582(c)(1)(A)(i). ECF

---

[3] Due to the retirement of Judge Nickerson, the case was reassigned to me on September 28, 2017. *See* Docket.

pursu129. Then, through the Office of the Federal Public Defender ("FPD"), defendant filed a supplemental motion (ECF 149), with exhibits.

Thereafter, in December 2021, the parties jointly moved for compassionate release. ECF 165. In particular, they sought a total sentence of thirty years of imprisonment, noting Mr. Blake's remarkable rehabilitation efforts and the health risks he faced while incarcerated during the COVID-19 pandemic. *Id.* at 2–3. I granted the joint motion, thereby reducing defendant's total sentence to a term of 30 years of imprisonment. *See* ECF 167; ECF 168 (Amended Judgment). In particular, as to Counts One, Two, and Five, I imposed concurrent terms of twenty years of imprisonment. And, as to Count Three, I imposed a consecutive sentence of ten years. *Id.*

In March 2024, Blake filed another motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF 173 (the "Motion"). The FPD declined to supplement defendant's Motion. ECF 177. The government opposes the Motion, objecting to any further reduction of Blake's sentence. ECF 189 (the "Opposition").[4] Blake replied. ECF 192. Thereafter, Blake supplemented his Motion. ECF 195; ECF 203; ECF 208; ECF 211.

In addition, Blake has filed a motion to vacate under 28 U.S.C. § 2255. ECF 175 (the "Motion to Vacate"). Defendant argues that, pursuant to the Supreme Court's decision in *Lora v. United States*, 599 U.S. 453 (2023), his convictions under both 18 U.S.C. § 924(c) and (j) are unlawful. *Id.* at 4. In particular, he seeks to vacate his conviction under 18 U.S.C. § 924(c) (Count Three). ECF 185 at 11.

The government initially opposed the Motion to Vacate. ECF 178. It argued that defendant's double jeopardy claim was barred by the statute of limitations with respect to a claim

[4] ECF 189 was filed under seal. A redacted version is docketed at ECF 190.

under 28 U.S.C. § 2255; the claim was procedurally defaulted; and the "Court should simply dismiss the 18 U.S.C. § 924(j) count (Count Five) and leave the remaining counts and sentences intact." *Id.* at 5.

Blake replied on June 28, 2024. ECF 183. He also submitted exhibits. ECF 183-1 to ECF 183-7. He filed a duplicate reply on July 3, 2024. ECF 185, ECF 185-1 to ECF 185-7. Among other things, Blake disputes the government's proposal to dismiss Count Five, lodged under 18 U.S.C. § 924(j), while leaving the remaining sentence intact. ECF 183 at 10. Blake filed a supplement in September 2025. ECF 201. Then, on September 17, 2025, Blake asked the Court to hold his Motion to Vacate in abeyance "until the Supreme Court resolves the Circuit Split in the case of *United States v. Dewayne Barrett,* 935 F.4d 126, 130 (2nd Cir)." ECF 200; *see* ECF 193; ECF 201-1.

On January 14, 2026, the Supreme Court decided *Barrett v. United States*, 607 U.S. 128, 135 (2026). Thereafter, on February 5, 2026, the government submitted correspondence to the Court regarding *Barrett* and the Motion to Vacate. ECF 204. It stated that "*Barrett* does appear to support the Defendant's Double Jeopardy claim," which is predicated on defendant's dual convictions under 18 U.S.C. § 924(c) (Count Three) and § 924(j) (Count Five). *Id.* at 1. Nevertheless, the government urged the Court to resolve the issue "by simply dismissing the § 924(j) count, Count Five," without altering defendant's total sentence. *Id.*; *see also* ECF 178.

Blake subsequently moved for appointment of counsel. ECF 205 ("Counsel Motion"). And, on March 6, 2026, he filed another supplement. ECF 206. There, he asserts that "a sentence of 28 years will reflect respect for the law, provide adequate deterrence and protect the public from further crimes." *Id.* at 4. He also included a proposed "Release and Reentry Plan." ECF 206-1.

Blake, who was born in June 1985 (ECF 170 at 2), is now 41 years of age. He is currently incarcerated at FCI Ashland. *See Bureau of Prisons* ("BOP") *Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP Register Number 42501-037) (last accessed Oct. 23, 2026). He has a projected release date of December 25, 2030. *Id.*

Defendant had his initial appearance in federal court on August 31, 2006, and he was detained. ECF 170 (Presentence Report or "PSR") at 2. According to the PSR (*id.* at 2), defendant was in State custody from October 26, 2002 to June 19, 2003, and from November 18, 2003 to June 22, 2004. *Id.* Therefore, Blake has served about 253 months of his 360-month sentence, or roughly 70% of his sentence. To Blake's credit, his disciplinary record reflects no infractions. *See* ECF 149-7; ECF 192-4 at 2.

No hearing is necessary to resolve the motions. Local Rule 105.6; 28 U.S.C. § 2255(b). For the reasons that follow, I shall deny the Motion (ECF 173), without prejudice. I shall grant the Motion to Vacate (ECF 175), and dismiss the defendant's conviction for Count Five as well as the corresponding sentence. Nevertheless, defendant's total sentence shall remain unchanged. Because defendant has ably presented his Motion to Vacate, I shall also deny his Counsel Motion (ECF 205).

## I. Factual and Procedural Background

During a carjacking committed by the defendant and his accomplice, Terrence Tolbert, on September 19, 2002, Straughan Lee Griffin was shot and killed outside his home in Annapolis. *See Blake v. State*, 381 Md. 218, 222, 849 A.2d 410, 412 (2004); *Blake*, 571 F.3d at 335; *State v.*

*Tolbert*, 381 Md. 529, 850 A.2d 1192 (2004). The defendant was seventeen years old at that time. *Blake*, 571 F.3d at 336. The victim was fifty-one years of age. *Id.* at 335.[5]

On the evening of the murder, Blake and Tolbert met in Annapolis. ECF 123-1 at 5; *see* ECF 170, ¶ 8.[6] Blake knew that Tolbert was carrying a firearm. ECF 123-1 at 5. Blake and Tolbert decided to commit a carjacking and began looking for someone to rob. *Id.* Blake noticed Griffin and pointed him out to Tolbert as a potential target. *Id.* Griffin was standing near his car, a Jeep Grand Cherokee. *Id.*; *Blake*, 571 F.3d at 335. Blake and Tolbert approached him. ECF 123-1 at 5. Then, one of them shot Griffin in the head. *Id.* After the shooting, both Blake and Tolbert entered Griffin's vehicle and fled the area, driving over Griffin's body. *Id.*; *Blake*, 571 F.3d at 335. Griffin was transported to a nearby hospital, where he was pronounced dead. *Blake,* 571 F.3d at 335.

About a month later, on October 25, 2002, Tolbert was arrested by Maryland law enforcement for Griffin's murder, and he was interrogated. *Blake*, 381 Md. at 223, 849 A.2d at 412; *Tolbert*, 381 Md. at 545, 850 A.2d at 1195. Blake was arrested the next morning at his home. *Blake* at 413. Blake initially invoked his right to counsel. *Id.* at 223, 849 A.2d at 413. But, after Blake was presented with a charging document stating in capital letters that he was facing "DEATH," *id.* at 223–24, 849 A.2d at 413, Blake submitted to interrogation. Of import, because defendant was only seventeen when the offense occurred, he was ineligible for the death penalty

---

[5] In previous submissions, the government has said that the victim was forty-one years of age. ECF 136 at 1; ECF 178 at 1. Regardless of whether Griffin was forty-one or fifty-one, defendant and Tolbert committed a senseless, brutal killing of a man in the prime of his life.

[6] The PSR was not docketed at the time of sentencing. However, in 2021, while I was working on an earlier motion filed by Blake, I docketed the copy of the PSR that I located in the Chambers file.

under Maryland law. *Blake*, 571 F.3d at 336 (citing Md. Code, Criminal Law Article § 2-202(b)(2)(i)).

The Grand Jury for Anne Arundel County indicted Blake "for the offenses of first degree murder, second degree murder, and manslaughter, in violation of former Maryland Code (1957, 1996 Repl. Vol., 2001 Cum. Supp.), Article 27 § 407, § 411, and § 387.[]" *Blake*, 381 Md. at 222, 849 A.2d at 412.[7] On June 3, 2003, the Circuit Court for Anne Arundel County granted Blake's motion to suppress his post-arrest statements, on the ground that the statements were obtained in violation of *Edwards v. Arizona*, 41 U.S. 477 (1981). *See Blake*, 381 Md. at 240, 849 A.2d at 423; *Blake*, 571 F.3d at 337–38. The Maryland Court of Appeals upheld the suppression of Blake's statements. *Blake*, 381 Md. 218, 849 A.2d 410.[8] The State then petitioned the United States Supreme Court for a writ of certiorari. *See Maryland v. Blake*, 2004 WL 2092629 (Sept. 13, 2004). The Supreme Court granted certiorari and held oral argument, but subsequently dismissed the writ as improvidently granted. *Maryland v. Blake*, 546 U.S. 72, 73 (2005). Thereafter, on December 22, 2005, the State of Maryland dismissed all charges against Blake.

Blake's legal victory was short lived. On August 31, 2006, Blake was indicted by a federal

---

[7] In addition, the grand jury indicted Tolbert "for the offenses of first degree murder, second degree murder, manslaughter, armed carjacking, armed robbery, conspiracy to commit murder, conspiracy to commit armed carjacking, conspiracy to commit armed robbery, and use of a handgun in the commission of a felony." *Tolbert*, 381 Md. at 543, 850 A.2d at 1194.

[8] In the Maryland general election held in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. However, I shall refer to the court by the name that was in effect when the cited decisions were issued.

grand jury for the same offense conduct that had been previously charged by the State. ECF 1; *see Blake*, 571 F.3d at 338.[9] Thereafter, Judge Nickerson denied Blake's motion to suppress his post-arrest statements. *Blake*, 571 F.3d at 338.

As noted, following a jury trial in June 2007, Blake was found guilty of Counts One, Two, Three, and Five. ECF 55; *see* ECF 62 at 1.[10] Specifically, Blake was convicted of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3) (Count One); conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Two); discharge of a firearm in furtherance of a crime of violence, under 18 U.S.C. § 924(c) (Count Three); and murder of Griffin by firearm, under circumstances that constituted first degree murder, as defined at 18 U.S.C. § 1111, in violation of 18 U.S.C. § 924(j). ECF 62.

The PSR (ECF 170) grouped Counts One, Two, and Five for purposes of determining defendant's offense level for these counts under the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶¶ 27, 28. Defendant had an offense level of 43, under U.S.S.G. § 2A1.1. *Id.* ¶¶ 29, 34, 36. Counts One, Three, and Five, by statute, carried maximum terms of life imprisonment. *See id.* ¶¶ 53, 55, 56. Based on a total offense level of 43 and a criminal history category of II, the Guidelines for Counts One, Two, and Five called for life imprisonment. *Id.* ¶ 57. As to Count Three, the Guidelines for an offense under 18 U.S.C. § 924(c) corresponded to the mandatory minimum term of imprisonment of ten years. *See* U.S.S.G. § 2K2.4(b). ECF 170,

[9] Tolbert was prosecuted only in State court. *See State v. Tolbert*, Case 02-K-02-002319 (Circuit Court Anne Arundel County). In 2005, a jury convicted Tolbert of seven counts, including first degree murder. *Id.* To my knowledge, Tolbert is serving a life sentence. *Id.*, Docket, https://perma.cc/6UT3-VL7J (last accessed Aug. 14, 2026); *see also* ECF 199-1 at 7 n.1.

[10] During the jury trial, Blake sought to file an interlocutory appeal of the court's order denying defendant's motion to dismiss the indictment for lack of subject matter jurisdiction. ECF 42. Judge Nickerson denied Blake's request. ECF 47.

¶ 40. Moreover, the statute requires imposition of a term of imprisonment consecutive to all other sentences. *See* 18 U.S.C. § 924(c)(1)(D)(ii); ECF 170, ¶ 55.

The PSR indicated that defendant had one prior criminal conviction as an adult, and two prior findings of juvenile delinquency, ECF 170, ¶¶ 42–48. This yielded a total of three criminal history points, and a criminal history category of II. *Id.* ¶ 49. Defendant's prior offenses are described below.

In July 2001, at age sixteen, Blake was referred to the Juvenile Services Administration ("JAS") for Anne Arundel County. *Id.* ¶ 42. According to an Annapolis Police Department Incident Report, officers stopped and frisked Blake and "recovered a tubular object containing suspected cocaine in his jacket pocket." *Id.* ¶ 43. Blake was found delinquent and placed on probation. *Id.* ¶ 42. Blake satisfied the conditions of his probation. *Id.*

On January 31, 2002, while Blake was still sixteen years old, he was again referred to JAS. *Id.* ¶ 44. According to an Annapolis Police Department Incident Report, a police officer conducting surveillance observed Blake "constantly reaching toward his belt area and approaching vehicles." *Id.* ¶ 45. When "the officer approached the defendant he threw something toward a tree" and the officer "recovered a bottle with suspected cocaine." *Id.* Blake was found delinquent and placed on probation. *Id.* ¶ 44. Blake satisfied the conditions of his probation. *Id.*

In April 2006, when Blake was twenty years of age, he was convicted in the Circuit Court for Anne Arundel County of second-degree assault. *Id.* ¶ 47. The offense occurred in July 2005, while the State murder case was still pending. According to the statement of charges, Blake allegedly harassed his ex-girlfriend by following her down the street, blocking her from entering her vehicle, snatching her phone and throwing it to the ground, and grabbing her jewelry. *Id.* ¶ 48.

Blake was sentenced to six years of imprisonment, which was suspended, and he was placed on probation for three years. *Id.* ¶ 47.

Sentencing was held in this case on August 15, 2007. ECF 60. At the time of sentencing, Blake was twenty-two years old. ECF 170 at 2. He was in a two-year relationship with a woman with whom he has a daughter. *Id.* ¶ 72. His child was about a year old at the time of sentencing. *Id.* Blake advised that "he was present for his daughter's birth and he was able to help care for her until she was 4 months old." *Id.*

Blake is 5'11" tall and, at sentencing, he weighed 192 pounds. *Id.* ¶ 78. He described witnessing "domestic violence between his parents until his father moved out when" Blake was three years old. *Id.* ¶ 68. Blake related that "his father was 'in and out' of prison" and he had "occasional contact with him." *Id.* Blake also stated that, "due to the community he was raised in, he was exposed to guns and violence." *Id.* Nevertheless, Blake denied "any mental or emotional health problems." *Id.* ¶ 75. But, his mother related that Blake was "short-tempered; and at times, would punch the wall." *Id.* ¶ 77. However, Blake's mother also claimed that Blake is "not a violent person" and surmised that Blake's "anger stemm[ed] from witnessing domestic violence as a child." *Id.*

Blake consumed alcohol for the first time when he was twelve years old. *Id.* ¶ 80. By the age of seventeen, Blake was consuming alcohol every weekend. *Id*. Blake first used marijuana at the age of thirteen and, prior to his arrest for the crimes at issue, he used marijuana four or more times per day. *Id.* ¶ 81. Blake used PCP for the first time when he was sixteen years old and had used PCP a total of about 200 times. *Id.* Blake used ecstasy at age seventeen and was using ecstasy once per day before his arrest. *Id.*

As noted, Judge Nickerson sentenced Blake to life in prison as to Counts One and Five; a concurrent term of 240 months as to Count Two, and 120 months as to Count Three, consecutive, for a total term of life imprisonment plus ten years. ECF 62. Thereafter, Blake noted an appeal to the Fourth Circuit. ECF 63. He argued, *inter alia*, "that his sentence was procedurally unreasonable because the district court . . . erred in refusing to grant him a two- or four-level offense-level reduction for being a minor or minimal participant . . . ." *Blake*, 571 F.3d at 352; *see* U.S.S.G. § 3B1.2. According to Blake, the evidence demonstrated that Tolbert controlled the gun, pulled the trigger, and drove the vehicle away." *Blake*, 571 F.3d at 352.

The Fourth Circuit affirmed. The Court found "no clear error" in Judge Nickerson's decision not to reduce the offense level on the ground that Blake was a minimal participant. *Id.* It reasoned: "Regardless of whether Blake actually controlled the gun, pulled the trigger, or drove the car, he comprised one half of an armed two-person carjacking team. Indeed, he was the person who pointed Griffin out and suggested to Tolbert that they rob him." *Id.* at 353. The mandate followed on July 24, 2009. ECF 79.

As noted, in January 2011, Blake moved to vacate his sentence, pursuant to 28 U.S.C. § 2255. ECF 80. He claimed that his sentence "was obtained in violation of his sixth amendment right to effective assistance of counsel." ECF 80-1 at 1. Moreover, Blake claimed that his arrest was unsupported by probable cause, and he averred that his counsel was deficient for failing to file a motion to suppress his post-arrest statement. *Id*. at 7, 14. Judge Nickerson denied the motion, finding that "had Defendant's trial counsel moved to suppress his post-arrest statement on the ground now advanced by Defendant, the motion to suppress would have been denied.[]" ECF 84 at 6–7; *see* ECF 85.

Blake appealed. ECF 86. The Fourth Circuit remanded the matter to the district court "for the limited purpose of permitting the district court to supplement the record with an order granting or denying a certificate of appealability." ECF 89 at 2. After the district court denied a certificate of appealability, the Fourth Circuit dismissed Blake's appeal. ECF 91; ECF 92; ECF 93.

On February 1, 2017, Blake filed a motion seeking authorization to file another 28 U.S.C. § 2255 motion. *In re Leeander Blake*, 17-125 (4th Cir.), ECF 2. By Order of February 22, 2017 (ECF 94), the Fourth Circuit granted Blake's motion. The Fourth Circuit found that Blake had "made a prima facie showing that a new rule of constitutional law announced in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), and made retroactive by *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), may apply to his case." *Id.* at 1.

Then, on March 6, 2017, Blake filed a second motion to vacate under 28 U.S.C. § 2255. ECF 96. Then, on May 9, 2017, through appointed counsel (ECF 98, ECF 100), Blake filed an amended petition. ECF 101. He argued that his life sentence, *i.e.*, life without parole, was illegal because he was a juvenile at the time of the crimes. And, he claimed ineffective assistance of State trial counsel, based on the alleged failure of defense counsel to convey a lenient plea offer when the matter was in State court. *Id.*

The government and Blake subsequently reached an agreement as to the disposition of Blake's § 2255 motion. ECF 123-1 (the "Agreement"). Among other things, they agreed to recommend to the Court a reduction of Blake's sentence to a total of forty years of imprisonment. *Id.* at 1. The Agreement also contained a factual stipulation regarding the murder of Mr. Griffin.

*Id.* at 5–6. Blake, Blake's counsel, and government counsel signed the Agreement as well as the factual stipulation. ECF 123-1 at 4, 6.[11]

Thereafter, the parties filed a "Joint Motion to Reduce Sentence," asking the Court to reduce defendant's sentence to a total of forty years of imprisonment. ECF 123 ("Joint Motion"). In support of the Joint Motion, the parties appended the Agreement. ECF 123-1.

Notably, in the Agreement, Blake represented that he "carefully reviewed every part" of the Agreement with his lawyer, understood it, and "voluntarily agree[d] to it." *Id.* at 4; *see also id.* at 6. He also represented that the proposed resolution would "settle, resolve, and dispose of any outstanding claims or challenges pertaining to any past, pending or future Motion to Vacate pursuant to 28 U.S.C. § 2255[.]" *Id.* ¶ 2.

Of import, Blake admitted his guilt as to the "crimes of carjacking, conspiracy to possess firearms in furtherance of a crime of violence, possession and discharge of firearms in furtherance of a crime of violence, and murder as a result of the possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 2119, 924(o), 924(c) and 924(j), respectively, as charged in the Indictment." *Id.* ¶ 4. However, Blake did not admit to being the person who pulled the trigger and shot Mr. Griffin. ECF 123-1 at 5.

In particular, the Agreement included the following factual stipulation, *id.* at 5–6:

> On September 19, 2002, the Defendant Leeander Blake and a co-conspirator (CC1) participated together in the carjacking of victim Straughan Lee Griffin, in Annapolis, Maryland. The Defendant and CC1 met prior to the commission of the crime, and walked into downtown Annapolis. CC1 was armed with a firearm, and the Defendant knew that CC1 had a firearm. During the time they were together, the Defendant and CC1 agreed that they would take a car from another person through a carjacking. The Defendant and CC1 then began to look for someone to rob.

[11] Griffin's family agreed with the reduction of the defendant's sentence to forty years. ECF 123 at 5.

> Blake and CC1 approached several people on the street in Annapolis. Several of those citizens testified during Blake's trial that they believed Blake and CC1 were approaching them or hovering near them as if considering robbing them. Ultimately, Blake and CC1 continued their walk and were seen walking in the direction of Cumberland Court, Annapolis, Maryland.
>
> As Blake and CC1 approached Cumberland Court, they came upon victim Straughan Lee Griffin, who was near his car. The Defendant noticed Mr. Griffin and pointed out Mr. Griffin to CC1 as a potential person to rob of his vehicle.
>
> The Defendant and CC1 approached the victim, and one of them took out a firearm and shot the victim through the head. The Defendant and CC1 then got into Mr. Griffin's vehicle, and fled the area. The vehicle stolen by CC1 and the Defendant was the victim's Jeep Grand Cherokee. The carjacking took place in Annapolis, within the District of Maryland.
>
> Annapolis Police investigators ultimately developed evidence and arrested CC1 and the Defendant. During questioning, and after being advised of his *Miranda* rights, the Defendant admitted his participation in the carjacking, including that the Defendant and CC1 agreed to take a car via a robbery; the Defendant admitted that he knew prior to the shooting that CC1 was armed with a firearm; and the Defendant admitted that the Defendant pointed out Mr. Griffin as a possible victim for the offense.
>
> The Defendant agrees that he did agree with CC1 to commit a carjacking on September 19, 2002. He agrees that he and CC1 then committed the carjacking of Mr. Griffin in furtherance of that conspiracy, and that the commission of the carjacking described herein was reasonably foreseeable to the Defendant. The Defendant agrees that he did participate in the carjacking of Mr. Griffin directly and by aiding and abetting CC1, by pointing out Mr. Griffin as a possible victim to CC1.
>
> The Jeep Grand Cherokee referenced above was manufactured outside Maryland and traveled in interstate commerce prior to September 19, 2002.

In addition, the Agreement contained a waiver provision by which Blake agreed not to seek future vacatur of his convictions or modifications to his sentence. ECF 123-1, ¶ 7(e). The waiver states, in part: "The Defendant further agrees to waive, and not file, any additional challenges, collateral attacks, motions to modify his sentence, motions to vacate his sentence, or any other motion, petition or pleading under any provision of law whatsoever to vacate, adjust, modify or

reduce the sentence being imposed in this case. The Defendant agrees not to file any additional motions or pleadings pursuant to 28 U.S.C. § 2255." *Id.*

However, the Agreement also provides, *id.*: "The Defendant does not waive the right to file any motion or seek other relief on either of the following grounds: (1) a motion or other request for relief based on case law, subsequent to the date of this agreement, that renders any of the crimes of conviction in this case unconstitutionally void; or (2) a motion or other request for relief based on a statutory amendment, subsequent to the date of this agreement, to any of the statutes charged in the counts of conviction in this case, if such a statutory amendment modifies the elements or penalties of any of the counts of conviction, and such statutory amendment is retroactively applicable to convictions predating the statutory amendment."

As indicated, the Court granted the Joint Motion. ECF 127; ECF 128. Accordingly, the Court reduced Blake's sentence of life imprisonment plus ten years to a total term of forty years of imprisonment. *Id.* As noted, the Court imposed concurrent sentences of thirty years of imprisonment for Counts One and Five; twenty years, concurrent, for Count Two; and ten years for Count Three, consecutive as to all other counts. *Id.*

Subsequently, Blake, pro se, moved for compassionate release. ECF 129. He expressed "concerns about COVID-19" because of his "pre-existing conditions[.]" *Id.* at 1. The government opposed Blake's motion. ECF 135.[12] Blake replied. ECF 142.

Mr. Blake's mother, sister, and daughter wrote to the Court in support of Blake's motion. ECF 137; ECF 138; ECF 139. In addition, Blake submitted letters from the staff psychologist for the Bureau of Prisons ("BOP"), outlining Blake's involvement on the Suicide Watch Cadre and

[12] A redacted version of the government's opposition is docketed at ECF 136.

Mental Health Companions programs, which support inmates on suicide watch and provide peer support services. ECF 141 at 3–4. Attorneys from the Office of the FPD subsequently entered an appearance on behalf of Blake. ECF 143; ECF 146.

Then, on December 15, 2021, the parties filed a "Joint Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 165 ("Second Joint Motion"). In the Second Joint Motion, the parties stated: "Mr. Blake has presented extraordinary and compelling circumstances in this case based on several circumstances, including the risks posed by the ongoing pandemic[.]" *Id.* at 3, ¶ 6.[13] Further, the parties agreed "that a total sentence of 30 years in prison would satisfy the goals of sentencing under 18 U.S.C. § 3553(a)", noting Blake's "unparalleled efforts at rehabilitation, his perfect disciplinary record, and his complete acceptance of responsibility." *Id.*

Of note, the Second Joint Motion recounts defendant's "rehabilitative transformation, made all the more remarkable by the fact that he was only 17 years old at the time of the offense conduct and 22 years old when he entered prison with a life sentence." *Id.* at 2, ¶ 5. Further, the Second Joint Motion asserts that defendant "is tremendously remorseful for his actions"; has taken "advantage of every rehabilitative opportunity presented to him,'" and has "tried to make amends by assisting fellow incarcerated persons with their struggles." *Id.* at 2, ¶ 5. The submission also describes defendant's leadership and assistance to others. *Id.*[14]

---

[13] Defendant's underlying medical conditions included "past respiratory issues, asthma and hypertension . . . ." ECF 165 at 2, ¶ 4.

[14] In its initial Opposition (ECF 157), the government implied that the victim's family did not favor a second reduction of sentence. *Id.* at 2 ("The family's openness to the 2019 reduction was an extraordinary act of generosity. . . . The family's position, and the 40-year sentence imposed, properly balanced the § 3553(a) factors."). To my knowledge, the Joint Motion does not mention the position of the victim's family.

Notably, the Second Joint Motion includes a "proviso." *Id.* ¶ 7. It states:

> The government joins in this Motion, subject to the following proviso: that Mr. Blake agrees to waive his right to pursue any further relief under 18 U.S.C. § 3582(c)(1)(A), except that he reserves the right to file, with the assistance of counsel, a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) for reasons related to health or family circumstances. . . .

The Court granted the Second Joint Motion on December 15, 2021. ECF 167. As a result, Blake's sentence was reduced to a total term of thirty years of imprisonment, as follows: concurrent terms of twenty years of imprisonment as to Counts One, Two, and Five, and a consecutive term of ten years of imprisonment as to Count Three. ECF 168 (Amended Judgment); ECF 169.

As stated, on March 18, 2024, Blake, pro se, again moved to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 173. And, on March 26, 2024, defendant again moved to vacate his sentence, pursuant to 28 U.S.C. § 2255. ECF 175.

Additional facts are included, *infra.*

## II. Legal Standards

### A. Compassionate Release, 18 U.S.C. § 3582(c)(1)(A)

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Smith*, 2026 WL 509318, at *1 (4th Cir. Feb. 24, 2026) (per curiam); *United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d

492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (unreported) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release. . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Fernandez v. United States*; 608 U.S. 411, 146 S. Ct. 1292, 1302, 1304 (2026); *United States v. Washington*, 161 F.4th 816, 818 (4th Cir. 2025); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP). However, the safety valve of § 3582 languished, because

the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. The 2018 FSA was "a landmark piece of legislation that changed the federal criminal-sentencing system in numerous respects." *Hewitt v. United States*, 606 U.S. 419, 424 (2025).

Of relevance here, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A); *see Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *see also United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), *abrogated on other grounds by Rutherford v. United States*, 608 U.S. 454, 146 S. Ct. 1320 (2026). In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *McCoy*, 981 F.3d at 275–76.[15]

[15] If a defendant has already exhausted administrative remedies upon filing a first motion for compassionate release, the defendant does not need to meet the bar for exhaustion a second time, should the defendant seek to renew the motion. *United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (unreported).

Notably, a defendant is "not entitled to compassionate release as a matter of right." *United States v. Holley*, 179 F.4th 985, 989 (4th Cir. 2026). In two cases, both decided on May 28, 2026, the Supreme Court clarified the standard by which a court is to analyze a motion for compassionate release. *See Rutherford v. United States,* 608 U.S. 454, 146 S. Ct. 1320; *Fernandez v. United States*, 608 U.S. 411, 146 S. Ct. 1292.

The Supreme Court observed in *Fernandez* that "Congress made compassionate release available only when 'extraordinary and compelling reasons' justify it." *Fernandez*, 146 S. Ct. at 1302. Similarly, the Court said in *Rutherford*, 146 S. Ct. at 1330: "The compassionate release provision empowers a district court to 'reduce the term of imprisonment' if it finds, among other things, that 'extraordinary and compelling reasons warrant such a reduction.'" (Quoting 18 U.S.C. § 3582(c)(1)(A)(i)). And, said the *Fernandez* Court, this "is a demanding standard." *Fernandez*, 146 S. Ct. at 1302.

*Rutherford* pertains to a provision in the 2018 FSA that eliminated the "25-year stacking requirement for first-time offenders [under 18 U.S.C. § 924(c)]: A 25-year consecutive sentence is now required only for a 'violation . . . that occurs after a prior conviction . . . has become final.'" *Rutherford*, 146 S. Ct. at 1327 (some quotation marks omitted; first and third alterations added).

In unrelated cases, the defendants in *Rutherford*, Rutherford and Carter, had been convicted of multiple firearms offenses under 18 U.S.C. § 924(c). They sought compassionate release on the ground that, in the FSA, Congress enacted a nonretroactive change to the statutory scheme, eliminating the stacking of mandatory minimum penalties with respect to first-time offenders. As a result, this created sentencing disparities between former and current offenders. In particular, a first-time offender convicted of multiple § 924(c) offenses sentenced after the change in the law would face a substantially lower mandatory minimum sentence under § 924(c) as compared to a

similarly situated defendant sentenced before the change in the law. *Id.* at 1327. Defendants complained that their sentences were "'unusually long'" in light of the congressional determination that the § 924(c) stacking provision was "too punitive." *Id.* at 1329 (citation omitted). In defendants' view, the sentencing disparities constituted an extraordinary and compelling ground for compassionate release. *Id.* at 1327, 1329.

The Supreme Court noted that defendant Rutherford "earned" a 32-year minimum sentence under § 924(c), *id.* at 1326, with his total sentence in excess of 42 years. *Id.* at 1326–27. Defendant Carter's § 924(c) term was 57 years out of a total sentence of 70 years. *Id.* at 1327. However, if they were sentenced after the change in the law, Rutherford's mandatory minimum would have been fourteen years, and Carter's would have been twenty-one years. *Id.* at 1327.

Nevertheless, the *Rutherford* Court concluded that the sentencing disparities created by the nonretroactivity of the change in the law did not constitute an extraordinary and compelling reason warranting compassionate release. *Id.* at 1330. The *Rutherford* Court explained, *id.*: "The term 'extraordinary' means 'most unusual,' 'far from common,' or 'having little or no precedent.'" (Quoting Webster's Third New International Dictionary 807 (1976)); *see Fernandez*, 146 S. Ct. at 1302. And, the Court defined "Compelling" as "'tending to convince or convey by or as if by forcefulness of evidence.'" *Rutherford*, 146 S. Ct. at 1330 (citation omitted). The *Rutherford* Court added: "Putting these definitions together, 'extraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." *Id.* The Court underscored that although "the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass any consideration." *Id.* It said, *id.*: "Their meaning depends on context: A reason is 'extraordinary' and 'compelling' only if it is sufficiently unusual and convincing to 'warrant' compassionate release." *See also Fernandez*, 146 S. Ct. at 1307.

Of import, the *Rutherford* Court reasoned, 146 S. Ct. at 1330: "When Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reaso[n]' that 'warrant[s]' a sentence reduction." (Alterations in *Rutherford*). The Court added, *id.* at 1331: "It would also fall well outside the heartland of compassionate release, which has long been defined by a prisoner's personal circumstances," if nonretroactive sentencing amendments were to constitute a ground for compassionate release. In the Court's view, reducing a sentence on this basis "would undermine Congress's choice to leave the sentence intact." *Id.*[16]

*Fernandez*, 146 S. Ct. at 1304, is also noteworthy. There, the Supreme Court made clear that compassionate release is not "a vehicle for attacking the validity of a conviction . . . ." *Id.* In other words, a defendant "cannot deploy § 3582 to blunt what he perceives to be the sharp edges of § 2255." *Id.* Therefore, § 3582 "is not a suitable vehicle" for a § 2255 claim. *Id.* at 1305.

---

[16] The *Rutherford* Court distinguishes *Concepcion v. United States*, 597 U.S. 481 (2022). *Concepcion* involved § 404(a) of the 2018 FSA, which authorizes a reduction of sentence for defendants convicted of certain crack cocaine offenses. In that case, the Court repeatedly recognized the "wide discretion" of the sentencing judge "to craft appropriate sentences." *Id.* at 486; *see*, *e.g.*, *id.* at 492 (recognizing, *inter alia*, the "unbroken tradition" that "characterizes federal sentencing . . . ."]; *id.*at 490–91, 493. The Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the *Concepcion* Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence. . . ." *Id.* at 486–87. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.

In distinguishing *Concepcion*, the *Rutherford* Court states that *Concepcion* was decided "under a different provision of the Act." *Rutherford*, 146 S. Ct. at 1333. In *Rutherford*, the question was whether the prisoner was eligible for compassionate release in the first instance, whereas in *Concepcion* it was undisputed that the defendant qualified for a sentence reduction. *Id.*

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.[17]

The first step consists of two parts. The court "must determine: (1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see United States v. Pittman*, 2026 WL 1985360, at *1 (4th Cir. July 9, 2026) (per curiam); *United States v. Spruill*, 2026 WL 1650983, at *1 (4th Cir. June 8, 2026) (per curiam); *United States v. Blancher*, 2026 WL 1587515, at *1 (4th Cir. June 3, 2026) (per curiam); *United States of America v. Williams,* 2026 WL 752605, at *1 (4th Cir. Mar. 17, 2026) (per curiam); *United States v. Boyd*, 2026 WL 595579, at *1 (4th Cir. Mar. 3, 2026) (per curiam); *Smith,* 2026 WL 509318, at *1; *United States v. Johnson*, 2026 WL 237729, at *1 (4th Cir. Jan. 29, 2026) (per curiam); *United States v. Pope*, 2026 WL 207491, at *1 (4th Cir. Jan. 27, 2026) (per curiam); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021). The court's analysis of these two parts goes hand in hand. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025). If the first step is met, the court then proceeds to the second step.

---

[17] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps. *See*, *e.g.*, *Malone*, 57 F.4th at 173. But, in *Crawley*, 140 F.4th at 169, the Fourth Circuit stated that there are three criteria. Whether the criteria are counted as two or three, the substance is the same.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see United States v. Callaham*, 2026 WL 2169113, at *1 (4th Cir. July 28, 2026) (per curiam); *Pittman*, 2026 WL 1985360, at *1; *Williams,* 2026 WL 752605, at *1; *Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Smith,* 2026 WL 509318, at *2; *Washington*, 161 F.4th at 820; *United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023) (unreported); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

But, the Fourth Circuit has recognized that, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C.

§ 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. If there is no applicable policy statement relating to the defendant's compassionate release motion, the court has discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th at 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider *any* extraordinary and compelling reason for release") (cleaned up) (emphasis in *Johnson*).

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," the Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." (Emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 282, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the *McCoy* Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the

court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A). The court should apply the Policy Statement that is applicable "at the time the court renders its decision[,]" not at the time the motion is filed. *Crawley*, 140 F.4th at 170.

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

> (a) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It states: "Extraordinary and Compelling reasons exist under any of the following circumstances or a combination thereof[.]" It then identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling

reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency. . . ," § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); and, for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . .", § 1B1.13(b)(6).

U.S.S.G. § 1B1.13(b)(5), a catchall provision, is titled "Other Reasons." It pertains to a defendant who "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

In deciding whether a defendant has met the ten-year requirement in U.S.S.G. § 1B1.13(b)(6), the district court may only consider the time a defendant has served in prison, and cannot adjust that amount with good-time credits. *Crawley*, 140 F.4th at 172–73. But, as noted, under § 1B1.13(b)(5), the district court may consider "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." The capacious language in § 1B1.13(b)(5) underscores that the enumerated circumstances

listed in the Policy Statement are not an "exhaustive list" of extraordinary or compelling reasons. *Johnson*, 143 F.4th at 216.

For example, in *Johnson*, the Court affirmed a district court's decision to reduce a defendant's sentence based on the disparity between the defendant's sentence and those of his co-conspirators. *Id.* at 215–16. But, in *Fernandez*, 146 S. Ct. at 1302, the Supreme Court made clear that "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release."

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). Further, it states: "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *See Davis*, 99 F.4th at 654.

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). In addition, the provision states, *id.*: "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."

And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant establishes extraordinary and compelling reasons for relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *United States v. Washington* 161 F.4th 816, 821 (4th Cir. 2025); *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)).

Additionally, the court may consider the "'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th 541, 548 (quoting 18 U.S.C. § 3553(a)(1), (3), (6)). The Fourth Circuit has observed that "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 F.3d at 500). And, district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see Washington*, 2025 WL 3559989 at *3; *United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). In weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).

And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). Moreover, the district court's "discretion is not boundless" and "in exceptional case[s]" the district court can abuse this discretion either by neglecting to "adequately explain how it weighed the § 3553(a) factors" or by "failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*, 2025 WL 1864767, at *3, *4 (4th Cir. July 7, 2025) (unreported) (cleaned up) (finding that the district court abused its discretion by failing to acknowledge how the "multiplicity of factors combine to make the case for compassionate release").

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see Washington*, 161 F.4th at 821; *Malone*, 57 F.4th at 170; *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). It is "not difficult" for a district court to satisfy this standard. *Burleigh*, 145 F.4th at 550. However, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant

actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law"). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).

The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)). Nevertheless, in *Burleigh,* 145 F.4th at 550–51, the Court recognized that, even if a

defendant's sentence "would be shorter if issued today," this fact does not "increase the burden on district courts to explain their decision."

**B. Motion to Vacate under 28 U.S.C. § 2255(a)**

Section 2255(a) of Title 28 of the United States Code provides post-conviction relief to a prisoner in federal custody only on specific grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *See Hill v. United States*, 368 U.S. 424, 426–27 (1962) (citing 28 U.S.C. § 2255); *see also United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under § 2255, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). In order to prevail, a defendant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

Relief under § 2255 is meant to remedy fundamental constitutional, jurisdictional, or other errors. But, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

Notably, 28 U.S.C. § 2255 "imposes tight procedural constraints." *Fernandez*, 146 S. Ct. at 1300. Among those constraints are the limitations on second or successive § 2255 motions. When a criminal defendant does not "obtain authorization from [the Fourth Circuit] to file a second

or successive § 2255 motion, the district court necessarily lack[s] jurisdiction to consider" the successive § 2255 motion. *United States v. Byers*, 2026 WL 867905, at *1 (4th Cir. Mar. 30, 2026) (per curiam); *see* 28 U.S.C. § 2255(h). However, of relevance here, "when a prisoner's successful habeas petition results in a new, intervening judgment, the prisoner's first habeas petition to challenge that new judgment is not second or successive within the meaning of § 2244(b), regardless of whether the petition challenges the prisoner's sentence or underlying conviction." *In re Gray*, 850 F.3d 139, 144 (4th Cir. 2017).

As discussed, in January 2011, defendant filed his first motion to vacate his sentence under 28 U.S.C. § 2255. ECF 80. Judge Nickerson denied that motion in January 2012. ECF 84; ECF 85. In February 2017, the Fourth Circuit authorized Blake to file a successive petition under 28 U.S.C. § 2255. ECF 94. Blake, pro se, then moved to vacate. ECF 96. Through appointed counsel (ECF 100), Blake filed an amended petition. ECF 101. The government initially challenged the motion. ECF 102.

However, in May 2019, the parties filed a Joint Motion asking the Court to reduce Blake's total sentence to forty years of imprisonment. ECF 123. This Court granted the Joint Motion (ECF 127), thereby reducing Blake's sentence of life plus ten years to a total term of forty years of imprisonment. ECF 127. An Amended Judgment followed on May 21, 2019. ECF 128.

Because Blake's second motion to vacate (ECF 96; ECF 101) resulted in a new judgment (ECF 128), the § 2255 motion at issue here (ECF 175) constitutes defendant's first challenge to his new sentence. Therefore, defendant is not bound by the procedural constraints that apply to a second or successive § 2255 motion. In other words, Blake's Motion to Vacate did not require authorization from the Fourth Circuit to file it. Nor is it procedurally barred as a successive petition. *See In re Gray*, 850 F.3d at 144.

Section 2255(f) of 28 U.S.C. provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*See United States v. Green*, 67 F.4th 657, 663 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 226 (2023); *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017).

As indicated, under 28 U.S.C. § 2255(f)(3), the one-year statute of limitations begins to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" A "new rule" is one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane*, 489 U.S. 288, 301 (1989). In other words, "'a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.'" *Welch v. United States*, 578 U.S. 120, 129 (2016) (quoting *Teague*, 489 U.S. at 301) (alteration omitted).

Under § 2255(f)(3), there is "one, and only one, date from which the 1-year limitation period is measured: the date on which the right asserted was initially recognized by the Supreme Court." *Dodd v. United States*, 545 U.S. 353, 357 (2005) (internal quotation marks and citation omitted). Although courts other than the Supreme Court "can render a right retroactively

applicable, only the Supreme Court can *recognize* a new right under § 2255(f)(3)." *Brown*, 868 F.3d at 301 (emphasis in original); *see United States v. Thomas*, 627 F.3d 534, 536 (4th Cir. 2010) (stating "that § 2255(f)(3) does not require that the initial retroactivity question be decided in the affirmative *only* by the Supreme Court.") (emphasis in original).

The statute of limitations does not begin to run from the date a court made the right retroactive to cases on collateral review. *Dodd*, 545 U.S. at 358. The Supreme Court has acknowledged "that by giving the statutory text its plain meaning, there was a 'potential for harsh results in some cases,' particularly with respect to federal prisoners who have previously filed a § 2255 motion." *In re Phillips*, 879 F.3d 542, 549 (4th Cir. 2018) (explaining and quoting *Dodd,* 545 U.S. at 359). The *Dodd* Court "explicitly noted that, 'because of the interplay between' § 2255(f)(3) and (h)(2), 'an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law *will be time barred except in the rare case* in which this Court announces a new rule of constitutional law and makes it retroactive within one year.'" *In re Phillips*, 879 F.3d at 549 (quoting *Dodd,* 545 U.S. at 359) (emphasis in *Phillips*).

As to retroactivity, "[n]ew *substantive* rules generally apply retroactively." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (emphasis in original). "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Id.* at 353; *see Welch*, 578 U.S. at 135 (same). "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish[.]" *Schriro*, 542 U.S. at 351–52 (citation omitted). "Such rules apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make

criminal or faces a punishment that the law cannot impose upon him." *Id.* at 352 (quotation marks and citation omitted).

"[R]ules that regulate only the *manner of determining* the defendant's culpability are procedural." *Id.* at 353 (emphasis in original). And, "[n]ew rules of procedure . . . generally do not apply retroactively." *Id.* So, there is "retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quotation marks and citation omitted).

The scope of collateral review under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 578 U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted). "Accordingly, at least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal." *Foster*, 578 U.S. at 519 (citing, *inter alia*, *United States v. Roane*, 378 F.3d 382, 397 n.7 (4th Cir. 2006)); *see Fernandez*, 146 S. Ct. at 1300. Indeed, "it is well settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'" *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)) (ellipsis in *Dyess*); *see United States v. Caro*, 733 F. App'x 651, 659 (4th Cir. 2018) (same).

Generally, the rule governing procedural default of claims brought under § 2255 precludes consideration of any contentions that "'could have been but were not pursued on direct appeal, [unless] the movant . . . show[s] cause and actual prejudice resulting from the errors of which he complains.'" *Pettiford*, 612 F.3d at 280 (quoting *United States v. Mikalajunas*, 186 F.3d 490,

492–93 (4th Cir. 1999)); *see Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that "the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (alteration in *Reed*; citation omitted); *see also United States v. Taylor*, 2026 WL 822517, at *2 (4th Cir. Mar. 25, 2026) (per curiam); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019). Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see Dretke*, 541 U.S. at 393; *Massaro v. United States*, 538 U.S. 500, 505 (2003); *Carrier*, 477 U.S. at 496; *Frady*, 456 U.S. at 167–68.

In order to show cause for not raising the claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded their counsel's efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). It is not enough "that a claim cannot prevail in front of a specific court at a particular point in time" or that the "issue was unsettled[.]" *United States v. Dimkpa*, 169 F.4th 228, 233 (4th Cir. 2026).

The "'novelty' standard is a high one." *Id.* (quoting *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992)). In *Reed v. Ross*, 468 U.S. 1 (1984), the Supreme Court described three situations in which the novelty of a claim could constitute cause. The Court explained, *id.* at 17–18 (cleaned up) (quotation marks and citations omitted):

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court

> authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.
>
> By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement. Cases falling into the third category, however, present a more difficult question. Whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct this Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice.

Although the *Reed* categories "may helpfully inform the inquiry into whether a claim is so 'novel' that it was not 'reasonably available' at the time of a default[,] . . . the *Reed* categories may not be dispositive, and the analysis does not stop there." *Dimkpa,* 169 F.4th at 234. Rather, the "bottom-line inquiry [is]: Was the 'legal basis' for the defendant's claim 'reasonably available to counsel' at the time of the default?" *Id.* (quoting *Bousley*, 523 U.S. at 622). Notably, "a claim is reasonably available if prior precedent laid the basis for it. And the fact that other defendants perceived and litigated similar claims around the same time indicates that a claim is not so novel that it can excuse a default." *Dimkpa,* 169 F.4th at 234 (cleaned up) (citation omitted).

As to prejudice, the alleged error cannot simply create a possibility of prejudice; the petitioner must show "*actual* and substantial disadvantage" that "infect[s]" the petitioner's "entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Pursuant to *Carrier*, 477 U.S. at 494, prejudice does not support relief from a procedural default in the absence of a showing of cause. *See also Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). Indeed, it must be "an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Carrier*, 477 U.S. at 496.

To show "actual innocence," the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623; *Green*, 67 F.4th at 671. Moreover, the petitioner must meet this burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Jones*, 758 F.3d at 583; *see Bousley*, 523 U.S. at 623.

As the Fourth Circuit has said, "[a] valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

However, failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro*, 538 U.S. at 509; *see United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Indeed, such claims ordinarily are not litigated on direct appeal.

Claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Rather, such claims are usually litigated in a § 2255 action to allow for development of the record. *Massaro*, 538 U.S. at 504–06; *United States v. Ladson*, 793 F. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam).

Moreover, a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Quintero v. Garland*, 998 F.3d 612, 634 (4th Cir. 2021) (same); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same).

If the prisoner "clears" the "procedural hurdles" attendant to a § 2255 motion, "he must demonstrate that the applicable substantive law entitles him to relief." *Fernandez*, 146 S. Ct. at 1300. If a defendant establishes that he is entitled to relief under 28 U.S.C. § 2255, the district court must craft the proper remedy. Notably, "Section 2255 confers a broad and flexible power to the district courts to fashion an appropriate remedy." *Thomas v. United States*, CCB-04-232, 2024 WL 5239049, at *3 (D. Md. Dec. 27, 2024) (cleaned up; citation omitted).

"[T]he end result of a successful § 2255 proceeding must be the vacatur of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it

imposed by (a) a resentencing or (b) a corrected sentence." *United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007).

Of import, "[t]hough the statute authorizes a district court to conduct a full resentencing, it does not require one." *Id.* Rather, "a district court may *either* correct the petitioner's original sentence *or* resentence him." *Id.* (emphasis in original). Moreover, "a district court may *correct* the sentence by simply striking the sentence on the vacated count and re-entering the rest of the sentence without following any of the resentencing procedure." *Id.* (emphasis in original). On the other hand, "a resentencing requires certain procedural protections (the defendant must be allowed to allocute, the probation office must prepare a new presentencing report, and the district court reopens the record for new evidence and argument)." *Id.*

Pursuant to 28 U.S.C. § 2255(b), the court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (citation omitted); *see Taylor,* 2026 WL 822517, at *4; *United States v. LeMaster*, 403 F.3d 216, 220–23 (4th Cir. 2005); *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Ordinarily, a district court has discretion as to whether to hold a hearing, but "a hearing is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim . . . ." *Mayhew*, 995 F.3d at 176–77. If the district court "denies relief without an evidentiary hearing," the appellate court will "construe the facts in the movant's favor." *United States v. Akande*, 956 F.3d 257, 261 (4th Cir. 2020); *see United States v. Turner*, 841 F. App'x 557, 559 (4th Cir. 2021) (same).

There are no credibility issues here. Moreover, the facts at issue are not in dispute. No hearing is necessary.

## III. Discussion

### A. Motion for Appointment of Counsel

Blake seeks the appointment of pro bono counsel to assist in the litigation of his Motion to Vacate under 28 U.S.C. § 2255. ECF 205. He asserts that his Motion to Vacate "involves significant and complex legal issues arising from the Supreme Court's recent decision in *United States v. Barrett,* which addressed whether a defendant may be convicted and punished under both 18 U.S.C. § 924(c) and § 924(j) for the same conduct." *Id.* at 1. Blake adds that he "lacks formal legal training and access to adequate legal resources necessary to effectively litigate these complex issues." *Id.* at 2.

There is no Sixth Amendment right to counsel to pursue a petition for habeas relief. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). But, Rule 8(c) of the Rules Governing § 2254 Proceedings for the United States District Courts provides that a court must appoint counsel "[i]f an evidentiary hearing is required." No hearing is required, however. In any event, a court may provide counsel for an indigent inmate pursuing a petition for habeas corpus if "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Indeed, this Court has done so previously for Blake. *See* ECF 100.

Blake's various submissions with respect to his Motion to Vacate are impressive. They reflect that he has thoughtfully and thoroughly identified a serious issue, and has demonstrated the wherewithal to articulate the legal and factual basis for his contentions. Moreover, as discussed, *infra*, both the government and this Court agree as to the merits of Blake's argument under *Barrett,* 607 U.S. 128, *i.e.*, that he cannot be convicted under both 18 U.S.C. § 924(c) and 18 U.S.C. § 924(j). Clearly, counsel is not needed to assist Blake on that issue.

Nevertheless, the parties disagree as to defendant's request for a sentence reduction. The Court must also determine whether a resentencing is required.

The Court is quite familiar with the facts and the history of the case, based on previous motions that have been addressed. As discussed, in June 2007, a jury convicted Blake of carjacking resulting in death, under 18 U.S.C. § 2119(3) (Count One); conspiracy to possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o) (Count Two); possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three); and first degree murder by a firearm, as defined at 18 U.S.C. § 1111, in violation of 18 U.S.C. § 924(j) (Count Five). ECF 55; *see* ECF 62. Blake was initially sentenced to a total term of life imprisonment plus ten years. ECF 62. However, this Court has twice reduced Blake's sentence, for the reasons stated earlier. As a result, Blake is now serving a total sentence of thirty years of imprisonment. *See* ECF 127; ECF 128; ECF 167; ECF 168.

I do not believe the appointment of counsel is necessary for the Court to determine whether to vacate Count Three or, instead, Count Five; whether to hold a resentencing; and/or whether to reduce defendant's sentence. Blake has ably presented his position, and the Court appreciates the importance of the matter. I shall deny the Motion to Appoint Counsel (ECF 205).

## B. Motion to Vacate

### I.

As noted, the Court has substantially reduced the length of Blake's sentence. But, each conviction has remained intact. *Compare* ECF 62 *with* ECF 128; ECF 168. Currently, defendant is serving concurrent sentences of twenty years as to Counts One, Two, and Five, and ten years, consecutive, as to Count Three. ECF 168. In his Motion to Vacate, Blake focuses on his dual convictions for Count Three, under 18 U.S.C. § 924(c), and Count Five, under 18 U.S.C. § 924(j).

Blake filed a Motion to Vacate on March 26, 2024. ECF 175. He also filed an Affidavit. ECF 175-1. Blake relies on the Supreme Court's decision in *Lora v. United States*, 599 U.S. 453 (2023), asserting that his sentence violated the Double Jeopardy Clause, because he was improperly sentenced under both 18 U.S.C. § 924(c) and (j) for the same underlying conduct. *Id.* at 4. The government initially opposed Blake's motion. ECF 178. It asserted, *inter alia*, that "the Supreme Court did not recognize any new Double Jeopardy 'right' in *Lora*." *Id.* at 7; *see* ECF 199 at 2.

Blake replied. ECF 183, ECF 185 (same). He also submitted exhibits. ECF 183-1 to ECF 183-7; ECF 185-1 to ECF 185-7. He argues that his motion is timely under 18 U.S.C. § 2255(f)(3), (4). *Id.* at 3–6. He explains that, "until his discovery of *Lora*," he "never knew . . . that his punishment of 924(c) and 924(j) was cumulative punishment which violates The Double Jeopardy Clause." *Id.* at 6. In addition, Blake contests the government's claim of procedural default. *Id.* at 7–10. Moreover, defendant maintains that the appropriate remedy is not dismissal of Count Five. *Id.* at 10. Rather, he urges the Court to vacate Count Three, under 18 U.S.C. § 924(c). *Id.* at 11.

As noted, in September 2025, Blake wisely asked the Court to hold his motion in abeyance, pending the Supreme Court's decision in *Barrett*. ECF 200. The Supreme Court issued its decision in *Barrett,* 607 U.S. 128, on January 14, 2026. There, the Court held that Congress did not authorize cumulative punishment under 18 U.S.C. §§ 924 (c) and (j). *Id.* at 149.

On March 6, 2026, following the Supreme Court's decision in *Barrett,* Blake supplemented his Motion to Vacate. ECF 206. It is supported by an exhibit. ECF 206-1. Blake again claims that his dual convictions under § 924(c) and § 924(j) violate the "Double Jeopardy Clause and statutory limits on punishment[.]" ECF 206 at 2. Further, he asserts that his convictions are "multiplicitous," *id.*, and he urges the Court to conduct a resentencing. *Id.* at 3. Blake claims that

he is entitled to relief under 28 U.S.C. § 2255 because his dual convictions under 18 U.S.C. § 924(c) and 924(j) "arise from the same firearm conduct involving the same victim" and are thereby prohibited by the "Double Jeopardy Clause and statutory limits on punishment." *Id.*

Of import, the government concedes: "The holding in *Barrett* does appear to support the Defendant's Double Jeopardy claim." ECF 204 at 1. However, the government contends that the Court may remedy any double jeopardy issue between the § 924(c) (Count Three) and § 924(j) (Count Five) offenses "by simply dismissing the § 924(j) count, Count Five." *Id.*[18]

**2.**

Section 924(c) pertains to a person who carries, brandishes, or discharges a firearm in relation to "any crime of violence" or a "drug trafficking crime." 18 U.S.C. § 924(c)(1)(A). "When Congress passed 18 U.S.C. § 924(c) in 1968, the new subsection 'made it a discrete offense' to use or carry a firearm in connection with a federal crime of violence or drug trafficking crime, known as predicates." *Barrett*, 607 U.S. at 135 (quoting *Abbott v. United States*, 562 U.S. 8, 12 (2010)). Under the "elements clause" or "force clause," a crime of violence means a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A).[19]

---

[18] The government appears to have abandoned its pre-*Barrett* contention that defendant's double jeopardy claim is barred by the procedural default rule. *See* ECF 178 at 9–10; *see also United States v. Palacios*, 982 F.3d 920, 925–27. Notably, Blake filed his appeal in August 2007. ECF 63. He submitted his briefs to the Fourth Circuit in 2008. ECF 199-1; ECF 199-3. And, the Fourth Circuit ruled on Blake's appeal in July 2009. *Blake*, 571 F.3d 331.

To my knowledge, at the relevant time no appellate court had accepted a double jeopardy challenge to convictions under both §§ 924(c) and (j). Accordingly, Blake had no cause to raise this issue on appeal.

[19] Under 18 U.S.C. § 924(c)(3), a "crime of violence" is defined in two ways. *Bowe v. United States,* 607 U.S. 13, 19 (2026). One way is generally referred to as the "force clause" or "elements clause." The other is the so called "residual clause." Under the residual clause, a crime

Section 924(c) carries the potential of a life sentence, but it does not authorize the death penalty. It also includes mandatory minimum terms of imprisonment, and it requires that the sentence run consecutive to any other sentence. Generally, however, "[s]entencing judges 'have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose . . . ." *United States v. Sanya*, 652 F. App'x 168, 172 (4th Cir. 2016) (quoting *Setser v. United States*, 566 U.S. 231, 236 (2012)). But, Congress restricted this discretion in § 924(c)(1)(D)(ii). It provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment[.]"

In 1994, "'decades'" after Congress enacted § 924(c), Congress enacted 18 U.S.C. § 924(j). *Barrett,* 607 U.S. at 136 (citation omitted). Section 924(j) penalizes "[a] person who, in the course of a violation of subsection [924](c), causes the death of a person through the use of a firearm[.]" *Id.* at 137. The statute provides, *inter alia*, that if "the killing is a murder (as defined in section 1111)" the defendant shall "be punished by death or by imprisonment for any term of years or for life[.]" *Id.* § 924(j)(1).[20]

"Subsection (j) gave federal prosecutors tools they lacked both in the pre-existing subsection (c) and in the pre-existing murder and manslaughter statutes." *Barrett*, 607 U.S. at 137.

---

of violence is defined as a felony offense that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.§ 924(c)(3)(B). But, in *United States v. Davis*, 588 U.S. 445, 470 (2019), the Supreme Court held that the residual clause is unconstitutionally vague. *See Bowe*, 607 U.S. at 19. In contrast, in *United States v. Taylor*, 596 U.S. 845, 856–57 (2022), the Court upheld the constitutionality of the force clause.

[20] If the "killing is manslaughter (as defined in section 1112)," § 924(j)(2) requires that the defendant "be punished as provided in that section." *Id.* § 924(j)(2).18 U.S.C. § 1112(b) provides: "Whoever is guilty of voluntary manslaughter, shall be fined under this title or imprisoned not more than 15 years, or both; Whoever is guilty of involuntary manslaughter, shall be fined under this title or imprisoned not more than 8 years, or both."

In particular, it "expanded federal jurisdiction over more killings and authorized the death penalty for those amounting to murder." *Id.* at 138. And, unlike § 1111, it has no geographical limitation. *Id.* But, it does not include a mandatory minimum term. Nor does it require imposition of a consecutive sentence.

In *Lora*, 599 U.S. 453, the Supreme Court "consider[d] whether § 924(c)'s bar on concurrent sentences extends to a sentence imposed under a different subsection: § 924(j)." *Id.* at 455. The Court determined that "§ 924(c)'s bar on concurrent sentences" does not apply to sentences imposed under § 924(j), which "can run either concurrently with or consecutively to another sentence." *Id.* In reaching this conclusion, the *Lora* Court noted that § 924(j) "contains no consecutive-sentence mandate" of its own. *Id.* at 458. Moreover, "subsection (j) neither incorporates subsection (c)'s penalties nor triggers the consecutive-sentence mandate." *Id.* at 462. And, unlike subsection (c), which is "full of *mandatory* penalties," subsection (j) "generally eschews mandatory penalties in favor of sentencing flexibility" and "contains no mandatory minimums." *Id.* (emphasis in *Lora*). Therefore, the Court ruled that "the consecutive-sentence mandate in § 924(c)(1)(D)(ii) does not govern § 924(j) sentences[.]" *Id.* at 464.

In *Barrett*, 607 U.S. 128, the Court again examined the relationship between § 924(c) and § 924(j). There, the Court considered "whether a defendant who commits a single act that violates both § 924(c)(1)(A)(i) and § 924(j) "may be convicted only under one provision or the other, or instead may suffer two convictions." *Id.* at 131.

*Barrett* involved the sentence of Dwayne Barrett, a man who had "committed a series of robberies between August 2011 and January 2012." *Id.* at 132. During the commission of one of these robberies, "Barrett's confederate shot and killed Gamar Dafalla." *Id.* Barrett was convicted of seven charges, including Hobbs Act robbery of Dafalla under 18 U.S.C. § 1951, which was the

predicate for two more charges: using a firearm during the commission of a crime of violence, in violation of § 924(c)(1)(A)(i), and causing death, in violation of § 924(j)(1). *Id.* After a jury found Barrett guilty of all seven counts, the district court sentenced him to 90 years of imprisonment. *Id.* Subsequently, "the Second Circuit vacated one of Barrett's § 924(c) convictions", not at issue in the Supreme Court's decision, and the district court reduced Barrett's sentence to 50 years. *Id.* at 132–33. Of import, twenty-five of the years of Barrett's reduced sentence "came from a consecutive term on" the § 924(j) conviction, "into which the District Court merged" the subsection (c) conviction. *Id.* at 133.

After the Court decided *Lora,* 599 U.S. 453, Barrett appealed his sentence again, and the Second Circuit vacated his sentence and remanded for resentencing. *Barrett,* 607 U.S. at 133. Interpreting *Lora,* 599 U.S. 453, the Second Circuit concluded that subsections (c) and (j) "'are separate offenses for which Congress has clearly authorized cumulative punishments.'" *Barrett,* 607 U.S. at 134 (quoting *United States v. Barrett*, 102 F.4th 60, 89 (2d Cir. 2024), *cert. granted*, 604 U.S. ___, 145 U.S. Ct. 1307 (2025), *rev'd*, 607 U.S. 128 (2026), and on remand, 172 F.4th 210 (2d Cir. 2026)). "Because the Second Circuit's decision deepened a split among the Courts of Appeals," the Supreme Court granted certiorari. *Barrett,* 607 U.S. at 134 (citing *Barrett*, 604 U.S. ___, 145 S. Ct. 1307 (2025)).[21]

In its analysis, the Supreme Court considered *Blockburger v. United States,* 284 U.S. 299 (1932), "as 'a rule of statutory construction to help determine legislative intent[.]'" *Barrett,* 607 U.S. at 139 (quoting *Garrett v. United States,* 471 U.S. 773, 778–79 (1985)). As the Court observed, *Blockburger* "instructs 'that Congress ordinarily does not intend to punish the same

[21] The government joined Barrett in his appeal to the Court, and the Court "appointed an *amicus curiae* to defend the Second Circuit's judgment." *Barrett,* 607 U.S. at 134–35.

offense under two different statutes.'" *Barrett,* 607 U.S. at 139 (quoting *Whalen v. United States,* 445 U.S. 684, 691–92 (1980)); *see United States v. Whitley*, 105 F.4th 672, 677 (4th Cir. 2024) ("To determine whether two offenses charged under separate statutes are the same offense, courts apply the *Blockburger* test.").

I pause to review *Blockburger*. "The *Blockburger* test 'is essentially one of legislative intent' and 'focuses on the formal elements of the two crimes, finding them to be different offenses if each requires proof of a fact which the other does not.'" *Whitley*, 105 F.4th at 677 (quoting *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988)). "In determining whether offenses are the same in fact, [a court must] consult 'the entire record' of the proceedings'—'not . . . the indictment language only.'" *United States v. Glass*, 160 F.4th 563, 571 (4th Cir. 2025) (quoting *United States v. Schnittker*, 807 F.3d 77, 82 (4th Cir. 2015)), *cert. denied*, 146 S. Ct. 2747 (2026), and *cert. denied sub nom. Jackson v. United States*, 2026 WL 1780093 (June 22, 2026)). "If each offense 'requires proof of a fact that the other does not, the *Blockburger* test is satisfied,' meaning the two offenses are not the same, 'notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Whitley*, 105 F.4th at 677 (quoting *Brown v. Ohio*, 432 U.S. 161, 166 (1977)).

Notably, "[w]here two statutes define the same offense, 'the *Blockburger* presumption is triggered' and [a court must then] presume 'that Congress ordinarily does not intend to punish the same offense under two different statutes.'" *United States v. Ortiz-Colon*, 178 F.4th 1, 27 (1st Cir. 2026) (quoting *Barrett,* 607 U.S. at 139). However, the *Blockburger* presumption "can yield to a 'plainly expressed' [legislative] intent to abandon it." *Barrett,* 607 U.S. at 139 (quoting *Garrett,* 471 U.S. at 778–79) (alteration added). "In other words, if two statutes share common elements, such that neither requires proof of a distinct element, [the court must] 'search for a clear

manifestation of Congress's intent to authorize more than one punishment.'" *Ortiz-Colon*, 178 F.4th at 27 (quoting *Barrett,* 607 U.S. at 139). Without that clear manifestation of congressional intent, however, "the *Blockburger* presumption holds, and the multiple convictions will be unlawful." *Ortiz-Colon*, 178 F.4th at 27.

Under the first step of the *Blockburger* inquiry, the *Barrett* Court considered "whether § 924(c)(1)(A)(i) and § 924(j) define the 'same offense'", which required the Court to "compare the provisions in question and ask whether 'each . . . requires proof of a fact which the other does not.'" *Barrett,* 607 U.S. at 138–39 (quoting *Blockburger,* 284 U.S. at 304) (alteration in *Barrett*). The Court said that if it determines that the "answer is no, then the statutes define the same offense, and the *Blockburger* presumption is triggered." *Barrett,* 607 U.S. at 139. But, as noted, the "presumption can yield to a 'plainly expressed' intent to abandon it." *Id.* (citation omitted).

The Court readily determined that "§ 924(c)(1)(A)(i) and § 924(j) define the same offense.[]" *Id.*; *see also id.* at 131. The Court observed that "the relationship between subsection (c)(1)(A)(i) and subsection (j) is the classic relation of the lesser included offense to the greater offense, wherein the very same conduct violates two statutes, one which is fully subsumed within the other." *Id.* (quotation marks and citation omitted).

Then, the Court turned to the second step: "discerning whether Congress clearly intended to authorize multiple convictions for one act that violates both § 924(c)(1)(A)(i) and § 924(j)." *Id.* at 139–40. Applying the long-held presumption "that Congress intends to authorize only one conviction per offense," the Court determined that "Congress intended subsection (j) as an alternative, not a supplement, to subsection (c)(1)(A)(i)." *Id.* at 131.

In the Court's view, based on statutory text, Congress did not authorize "dual convictions for the same offense." *Id.* at 141 (cleaned up and citation omitted). The Court pointed out that

there is no indication in the statutory text that Congress expressed "any will to overcome *Blockburger*[.]" *Id.* at 144. And, the "legislative history suggests that, rather than stacking punishment or creating a brand new offense, subsection (j) . . . made a capital offense out of a pre-existing crime–the one at subsection (c)." *Id.* at 148–49 (cleaned up) (citation and quotation marks omitted). Accordingly, the Court determined that "Congress has not authorized convictions under both 18 U.S.C. §§ 924(c)(1)(A)(i) and (j) for one act that violates both provisions." *Id.* at 149.

Barrett had lodged a challenge under the Double Jeopardy Clause, embodied in the Fifth Amendment. *Barrett*, 607 U.S. at 138. It provides: No "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[22]

"Among other restrictions (such as prohibiting retrials after an acquittal), the Double Jeopardy Clause forbids punishing a defendant for violating two statutes that 'are in law and in fact the same offense.'" *United States v. Evans*, 165 F.4th 255, 265 (4th Cir. 2026) (quoting *Schnittker*, 807 F.3d at 81; *see Glass*, 160 F.4th at 571 ("Included in [the Double Jeopardy Clause] guarantee is a prohibition against the government dispensing multiple punishments to a defendant for the same offense.") (alteration added, citation and quotation marks omitted); *see also United States v. Adamiak*, 2025 WL 2911117, at *1 (4th Cir. Oct. 14, 2025) (per curiam), *cert. denied*, 146 S. Ct. 2646 (2026). The *Barrett* Court observed that defendant's "argument arrive[d] in constitutional garb," but it could not "'be separated entirely from a resolution of the question of statutory construction.'" 607 U.S. at 138 (quoting *Whalen*, 445 U.S. at 688). And, because the

[22] "The double-jeopardy prohibition applies 'to the States through the Fourteenth Amendment.'" *Wood v. Straughn*, 182 F.4th 382, 392 n.6 (4th Cir. 2026) (quoting *Benton v. Maryland*, 395 U.S. 784, 794 (1969)). "'In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn.'" *Wood*, 182 F.4th at 392 (quoting *Baum v. Rushton*, 572 F.3d 198, 206 (4th Cir. 2009)).

Court determined that "Congress did not authorize two convictions in this context," the Court did "not revisit whether Congress *could* do so consistent with the Double Jeopardy Clause." *Barrett,* 607 U.S. at 138 n.9 (emphasis in original).

As stated, under 28 U.S.C. § 2255, to receive relief, the petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss*, 323 F.3d at 454. In light of *Barrett,* 607 U.S. 128, Blake has established that his dual convictions under §§ 924(c) and 924 (j) are outside the statutory limits of what Congress has authorized under 18 U.S.C. § 924. As Blake points out, his convictions under §§ 924(c) and (j) punish him for the "same firearm, same victim, same criminal episode[.]" ECF 206 at 2.

The Supreme Court has plainly determined that "Congress has not authorized convictions under both" 18 U.S.C. §§ 924(c) and (j) "for one act that violates both provisions." *Barrett,* 607 U.S. at 149. Accordingly, Blake's convictions under both provisions cannot stand. It follows that defendant's Motion to Vacate is meritorious.

Before addressing the issue of the appropriate relief, I turn to the issue of the timeliness of the Motion to Vacate.

**3.**

Prior to the decision in *Barrett*, issued in January 2026, the government claimed that Blake's Motion to Vacate was untimely filed. ECF 178 at 6. Initially, based on *Lora*, Blake insisted that his Motion to Vacate is timely, pursuant to § 2255(f)(3). *See* ECF 175 at 11.

Pursuant to 28 U.S.C. § 2255(f)(3), a one-year limitations period begins on the date on which a newly asserted right is recognized by the Supreme Court and made retroactive on collateral review. *See* 28 U.S.C. § 2255(f)(3). To my knowledge, neither the Fourth Circuit nor any court

in this district has addressed whether *Barrett,* 607 U.S. 128, recognized a new right that is retroactive on collateral review.

A "Supreme Court case recognizes an asserted right under § 2255(f)(3) 'if it has formally acknowledged that right in a definite way.'" *United States v. Dandridge*, 833 F. App'x 390, 391 (4th Cir. 2021) (per curiam) (quoting *Brown*, 868 F.3d at 301). Here, the Court in *Barrett* answered the question left open in *Lora*, 599 U.S. at 461, concluding that "Congress intended subsection (j) as an alternative, not a supplement, to subsection (c)(1)(A)(i)." *Barrett*, 607 U.S. at 131. Accordingly, it held: "Congress has not authorized convictions under both 18 U.S.C. §§ 924(c)(1)(A)(i) and (j) for one act that violates both provisions." *Id.* at 149. In my view, this constitutes recognition by the Court of a right to be free from dual convictions under §§ 924(c) and (j) based on the same operative facts.

I must also consider whether the right is new. *Serrano-Delgado v. United States*, 833 F. Supp. 3d 151 (D.P.R. 2026), is instructive. In that case, the defendant drove two men to a bar to commit a robbery. *Id.* During the course of the robbery, one of the defendant's coconspirators killed an off-duty police officer. *Id.* The defendant and his coconspirators were charged with multiple crimes. In particular, defendant was charged with conspiracy to commit a robbery affecting interstate commerce, in violation 18 U.S.C. § 1951(a) ("Hobbs Act") (count one); commission of the robbery, in violation of 18 U.S.C. § 1951(a) (count two); discharging a firearm during and in relation to crimes of violence resulting in death, in violation of both 18 U.S.C. § 924(c)(1)(A)(iii) and § 924(j) (count three); and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (count four). *Id.* at 153–54.

A jury convicted Serrano of all charges. *Id.* at 154. He was sentenced to concurrent terms of two hundred forty months on counts one, two, and three, and a consecutive term of one hundred

twenty months on count four, for a total sentence of three hundred and sixty months of imprisonment. *Id.* The First Circuit affirmed. *Id.*; *see United States v. Serrano-Delgado*, 29 F.4th 16 (1st Cir. 2022). Defendant subsequently challenged his sentence pursuant to 28 U.S.C. § 2255. *Serrano-Delgado*, 833 F. Supp. 3d at 154. He argued, *inter alia*, that "his section 924(c) and section 924(j) convictions are unlawful because they violate *United States v. Taylor,* 596 U.S. 845 (2022), in which the Supreme Court held that an attempted Hobbs Act robbery is not a crime of violence for purposes of a section 924(c) and section 924(j) conviction." *Id.*

The district court ruled that *Taylor,* 596 U.S. 845, did not apply to defendant's convictions. *Id.* at 157. But, the court determined "that Serrano's section 924(c) and section 924(j) convictions overlap in violation of the Double Jeopardy clause [and] must be vacated pursuant to" *Barrett,* 607 U.S. 128. *Id.* The court observed: "There can be no dispute that Serrano's sentence does not comport with *Barrett,* but there is a question as to whether the rule can be applied retroactively." *Id.* at 158. The court concluded that "*Barrett* did not announce a new rule; it merely applied the *Blockburger* test to section 924(c) and section 924(j)." *Id.* Nevertheless, the court vacated defendant's conviction and sentence under section 924(j). *Id.*

Notably, the court left Serrano's total term of incarceration unchanged. *Id.* It explained that the "sentence previously imposed (a total of three hundred sixty months) continues to reflect the seriousness of the offenses, promote respect for the law, provide a just punishment, afford adequate deterrence to criminal conduct, protect the public from additional crimes by the defendant, and provides the defendant with needed correctional treatment." *Id.* at 158–59.

As discussed, the Supreme Court has held: "'[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *Welch*, 578 U.S. at 129 (emphasis in *Welch*; citation omitted; alteration in *Welch*). "A rule is

'dictated by precedent' if it was 'apparent to all reasonable jurists.'" *In re Rendelman*, 129 F.4th 248, 253 (4th Cir. 2025) (quoting *In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021)). In other words, "a case announces a new rule when it breaks new ground or imposes a new obligation on the government." *In re Rendelman*, 129 F.4th at 253 (cleaned up, citation, quotation marks, and alterations omitted). If a Supreme Court decision resolves "'arguments by several circuit courts . . . the rule ultimately adopted was open to reasonable debate and not dictated by [precedent].'" *Id.* at 254 (quoting *In re Thomas*, 988 F.3d at 789).

In 2020 the Fourth Circuit joined the Fifth, Sixth, and Ninth circuits "in holding that the Double Jeopardy Clause prohibits imposition of cumulative punishments for § 924(c) and § 924(j) convictions based on the same conduct." *Palacios*, 982 F.3d at 925 (citing *United States v. Gonzales*, 841 F.3d 339, 355 (5th Cir. 2016)); *see United States v. Wilson*, 579 F. App'x 338, 348 (6th Cir. 2014); *United States v. Ablett*, 567 F. App'x 490, 491 (9th Cir. 2014)); *see also United States v. Ortiz-Orellana*, 90 F.4th 689, 705 (4th Cir. 2024) ("[A] sentencing court may not impose cumulative punishments for § 924(c) and § 924(j) if those violations are based on the same conduct."), *cert. denied*, 145 S. Ct. 1890 (2025). But, in 2024, the Second Circuit held in *Barrett,* 102 F.4th at 89, that, "[a]s construed in *Lora*, § 924(c)(1) and § 924(j) crimes are separate offenses for which Congress has clearly authorized cumulative punishments."

Therefore, at the time the Supreme Court decided *Barrett,* 607 U.S. 128, there was disagreement among the circuits about whether Congress authorized cumulative punishments for convictions under subsections 924(c) and (j) of 18 U.S.C. Because this issue was "open to reasonable debate" before the Supreme Court definitively resolved the question in *Barrett,* 607 U.S. 128, I am satisfied that the Court's holding created a new right. *See In Re Rendelman*, 129 F.4th at 254.

Furthermore, *Barrett's* holding recognized a substantive rule that is retroactive under collateral review. The decision narrowed "the scope of a criminal statute by interpreting its terms." *See Schriro*, 542 U.S. at 351 (citation omitted). If this rule does not apply retroactively, there would be a "significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." *Id.* at 352 (quotation marks and citation omitted).

In sum, Blake was convicted and sentenced under both 18 U.S.C. § 924(c) and 18 U.S.C. § 924(j). ECF 168 at 1–3. In January 2026, the Court held in *Barrett,* 607 U.S. 128, that Congress did not authorize convictions under both statutes as punishment for the same underlying conduct. Accordingly, the right articulated by the Court in *Barrett,* 607 U.S. 128, is a new right and it is retroactive under collateral review. Because *Barrett* was decided on January 14, 2026, Blake's Motion to Vacate, as supplemented (ECF 206), is timely under § 2255(f)(3).

**4.**

The critical question is this: What relief is appropriate? *See Thomas,* 2024 WL 5239049, at *2. The Court has carefully considered its options. They include vacating and dismissing the conviction and sentence under 18 U.S.C. § 924(c) or, instead, vacating and dismissing the conviction and sentence under 18 U.S.C. § 924(j). If the Court dismisses the § 924(c) conviction, this would automatically reduce defendant's total sentence from thirty years to twenty years of incarceration. If the Court dismisses the § 924(j) conviction, the total sentence could remain unchanged, *i.e.*, thirty years.[23]

This Court has twice reduced defendant's sentence as to Count One (18 U.S.C. § 2119(3)), Count Two (18 U.S.C. § 924(o)), and Count Five (18 U.S.C. § 924(j)). *See* ECF 128, ECF 168.

[23] The Court could also decide to reduce the sentences for Counts One and Two, regardless of whether it vacates Count Three or Count Five.

Blake is now serving three concurrent sentences of twenty years for those offenses. ECF 168 at 3. In addition, Blake is serving a consecutive ten-year term for his conviction under 18 U.S.C. § 924(c) (Count Three). *Id.*

The government urges the Court to "remedy any Double Jeopardy issue between the 18 U.S.C. § 924(c) count (Count Three) and the 18 U.S.C. § 924(j) count (Count Five) by simply dismissing the § 924(j) count, Count Five." ECF 204 at 2. Blake contends that the "constitutional error" for his dual convictions under §§ 924(c) and (j) "should weigh heavier than just a technical correction." ECF 206 at 1. He reasons: "Vacatur of one firearm conviction necessarily disrupts the sentencing framework" upon which the Court previously crafted his sentence and under "the sentencing package doctrine, the court should conduct a resentencing." *Id.* at 3. He asks the Court to reduce his total sentence by two years, asserting his belief "that a sentence of 28 years will reflect respect for the law, provide adequate deterrence and protect the public from further crimes." *Id.* at 4.[24]

Of import, "§ 2255 confers a broad and flexible power to the district courts to fashion an appropriate remedy[.]" *United States v. Proctor*, 28 F.4th 538, 542 n.2 (4th Cir. 2022) (cleaned up) (citation and quotation marks omitted); *see Bethea,* 841 F. App'x at 556 (Section "2255 remedies are within the district court's equitable discretion.") As stated, the "end result of a successful § 2255 proceeding must be the vacatur[] of the prisoner's unlawful sentence (and perhaps one or more of his convictions) and one of the following: (1) the prisoner's release, (2) the grant of a future new trial to the prisoner, (3) or a new sentence, be it imposed by (a) a resentencing or (b) a corrected sentence." *Hadden*, 475 F.3d at 661.

---

[24] The government has advised that the victim's family opposes a further reduction in sentence. ECF 202.

Of relevance, the Fourth Circuit explained in *Hadden, id.* at 661 n.9: "By stating that one of the possible outcomes of a successful § 2255 petition is a 'new' sentence, we do not suggest that the 'new' sentence must be substantively different from the original one." Indeed, the Court observed that the district court has the power to strike a conviction under one count and reenter "the remaining sentence" if it is "satisfied with the resulting sentence." *Id.* at 669.

Notably, "the end result of the resentencing or correction of the prisoner's sentence is an entirely new sentence." *Hadden*, 475 F.3d at 664. In other words, "a new sentence is imposed by correction even if that correction merely changes the date to permit appeal." *Bethea*, 841 F. App'x at 550 (cleaned up and citation omitted).

The Eleventh Circuit has instructed: "A district court need not conduct a full resentencing when correcting the error does not change the guideline range and the district court does not make the sentence more onerous." *United States v. Thomason,* 940 F.3d 1166, 1172 (11th Cir. 2019). On the other hand, a district court may need to conduct a resentencing "if the district court vacates a mandatory-minimum sentence and then is able to consider the statutory sentencing factors for the first time." *Id.* at 1173. Indeed, "a district court's discretion to choose a remedy may be limited where the error undermines the sentence as a whole such that the district court must revisit the entire sentence, or if the court is called upon to exercise significant discretion, such as where the vacated sentence carried a statutory minimum penalty." *Green v. United States*, 737 F. Supp. 3d 351, 355 (E.D. Va. 2024) (citing *Thomason*, 940 F.3d at 1172-73; *United States v. Augustin*, 16 F.4th 227, 232 (6th Cir. 2021)).

In the event of a resentencing, the Fourth Circuit employs the sentence package doctrine. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017). The "sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant

convicted of multiple offenses." *Id.* But, the doctrine does not "automatically entitle" a criminal defendant to a reduction in his aggregate sentence "merely because" one of his convictions has been vacated. *Id.*; *see Thomas,* 2024 WL 5239049, at *4 ("[T]he sentencing package doctrine does not mandate a full resentencing in every case.").

In this case, the Court imposed sentence for multiple offenses, only one of which had a mandatory minimum. Therefore, the statutory sentencing factors were considered. It follows that the concern of *Thomason*, 940 F.3d at 1173, about a mandatory sentence precluding consideration of the sentencing factors, is not implicated.

Moreover, vacatur of Blake's conviction under 18 U.S.C. § 924(j) (Count Five) would not change defendant's Guidelines range. A conviction under either 18 U.S.C. § 2119(3) (Count One), for carjacking resulting in death, like 18 U.S.C. §924(j), for murder as a result of discharge of a firearm in furtherance of a crime of violence (Count Five), each give rise to the same offense level: 43. U.S.S.G. § 2B3.1(c)(1); *see id.* § 2A1.1; ECF 170, ¶ 29. Furthermore, the conviction under 18 U.S.C. § 924(j) does not carry a mandatory minimum, and the sentence may run concurrent with other sentences. As stated, Blake "received concurrent . . . sentences" of twenty years as to Counts One, Two, and Five, "so removal of" the twenty-year sentence under Count Five would have "no effect" on the other sentences Blake is serving. *See Green,* 737 F. Supp. 3d at 355.

Conversely, if the Court were to vacate the conviction under § 924(c) (Count Three), rather than § 924(j) (Count Five), the defendant's sentence would be reduced from thirty years to twenty years. This is because the Court was required to impose the sentence for Count Three consecutive to the other sentences.

I readily conclude that the proper course here is to vacate the defendant's conviction under 18 U.S.C. § 924(j) (Count Five). In this murder case, for which defendant initially received a life

sentence plus ten years, the sentence was twice reduced. In my view, notwithstanding defendant's age at the time of the murder and his impressive efforts to rehabilitate himself, a sentence of twenty years is not a just sentence.

The defendant's age was a factor in the earlier sentence reductions, coupled with defendant's rehabilitation and remorse. Nevertheless, the defendant participated in the senseless, brutal, random murder of an individual in connection with a carjacking. The victim, in the prime of his life, was ruthlessly shot in the head. As I see it, it would not promote respect for the law or serve the interests of justice to reduce Blake's sentence for a third time.

A resentencing is not warranted because I decline to vacate the conviction and sentence for Count Three, under 18 U.S.C. § 924(c). I am also of the view that a reduction of sentence for the other counts is not appropriate. Rather, I shall vacate defendant's conviction and sentence for Count Five, under § 924(j). This leaves defendant's total sentence unchanged.

**5. Certificate of Appealability**

In summary, I shall grant the Motion to Vacate (ECF 175). And, I shall dismiss Count Five as well as the sentence imposed for that conviction.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant as to a post-conviction claim. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *Hadden*, 475 F.3d at 659. In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017). Where

the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDonald*, 529 U.S. 473, 484 (2000).

In my view, Blake has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.[25]

### 6. Motion for Compassionate Release[26]

### A. Extraordinary and Compelling Reasons

Blake initially identified two extraordinary and compelling reasons that he claims warrant a reduction in his sentence: his unusually long sentence and his rehabilitation. ECF 173 at 1. Then, in a letter to the Court on August 18, 2025, Blake sought to amend his Motion to add a third ground, based on his mother's health. ECF 195. Blake's mother also wrote to the Court, asking for a reduction of her son's sentence so that he can help with her medical care. ECF 192-7.

### 1. Unusually Long Sentence

[25] Although this Court denies a COA, this ruling does not preclude Blake from seeking a COA from the appropriate appellate court, *i.e.*, the United States Court of Appeals for the Fourth Circuit.

[26] Blake asserts that he has exhausted his administrative remedies. ECF 173 at 2. In particular, he claims on that on February 12, 2024, he "filed his remedy with Warden R. Thompson at Fort Dix FCI." And, on March 6, 2024, he "received a denial stating that the BOP does not have authority to change an inmates imposed sentence without an amended judgment from the court." *Id.*; *see* ECF 173-1. The government agrees that Blake has "satisfied the administrative requirements for a § 3582(c)(1)(A) motion by making a request through the Federal Bureau of Prisons." ECF 189 at 6 (citing ECF 173 at 2).

The Motion was originally founded on Blake's claim that, in light of the Supreme Court's recent decision in *Lora*, 599 U.S. 453, he "was sentenced to cumulative punishment" as to his convictions under 18 U.S.C. § 924(c) (Count Three) and 18 U.S.C. § 924(j) (Count Five). ECF 173 at 2. According to Blake, "[f]ollowing new developments in the law, the validity of one of Mr. Blake's firearm convictions is now in serious question, and the court may vacate one of Mr. Blake's firearm convictions." ECF 208 at 2.

The government opposed the Motion. ECF 189. Defendant replied. ECF 192. He also submitted exhibits. *See* ECF 173-1; ECF 192-1 to ECF 192-9.

In defendant's reply, he asserts, without foundation, that the Court did not previously consider defendant's rehabilitation, lack of disciplinary infractions, or his programming efforts. ECF 192 at 1–2. This contention is specious. *See*, *e.g.*, ECF 157 at 4; ECF 165 at 2-3; ECF 914 at 19–27.

In the Second Joint Motion filed in December 2021 (ECF 165), both Blake and the government emphasize Blake's "rehabilitative transformation" during his incarceration. *Id.* at 2. The Second Joint Motion also describes Blake's remorse. *Id.* Further, the Joint Motion observes that Blake had "devoted his incarceration to taking advantage of every rehabilitative opportunity presented to him[.]" *Id.* On this basis, Blake and the government "agree[d] that a total sentence of 30 years in prison would satisfy the goals of sentencing under 18 U.S.C. § 3553(a), *particularly in light of Mr. Blake's unparalleled efforts at rehabilitation, his perfect disciplinary record, and his complete acceptance of responsibility*." *Id.* at 3 (emphasis added). And, it was on the basis of such information that I approved the Second Joint Motion. ECF 166.

In addition, Blake maintains that if he were sentenced today, "he would not receive a 30 year sentence." *Id.* He argues that he is serving cumulative punishment, which was not a basis

for the negotiations. *Id.* at 4. He also points out that his sentence exceeds the national average for murder and the average sentence in the Fourth Circuit. *Id.* at 3. In his view, a reduction of sentence would be consistent with the factors in 18 U.S.C. § 3553(a). *Id.* at 5. He also expresses "remorse" for his conduct, describing it as "senseless and totally wrong." *Id.* He included a letter of apology to the Griffin family. ECF 192-9.

The government counters that Blake's current sentence, thirty years, does not merit a reduction as unusually long for three reasons. ECF 189 at 8. They are as follows: (1) there has not been a change in the law that creates a gross disparity between the sentence being served and the sentence likely to be imposed if defendant were sentenced today; (2) defendant's current sentence is below the U.S. Sentencing Guidelines range for a crime involving murder; and (3) defendant negotiated this term of imprisonment in resolving his first compassionate release motion in 2021. ECF 189 at 8–9 (emphasis added).

In my view, defendant has not presented a viable ground for compassionate release based on the length of his sentence. The sentence of thirty years of imprisonment for murder is not unusually long or unduly long.

U.S.S.G. § 1B1.13(b)(6), titled "Unusually Long Sentence," provides (emphasis added):

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but *only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed,* and after full consideration of the defendant's individualized circumstances.

Section 1B1.13(c) of U.S.S.G., titled "Limitation on Changes in Law," is also noteworthy. It provides: "Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes

of determining whether an extraordinary and compelling reason exists under this policy statement."

Of import, a change in the law alone does not create an unusually long sentence, as defined under U.S.S.G. § 1B1.13(b)(6); the change in law must "produce a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . ." *Id.*; *see Crawley*, 140 F.4th at 170 (explaining that § 1B1.13(b)(6) requires "that there be a change in the law creating a gross disparity between the sentence [a defendant] is serving and the sentence [a defendant] would have received at the time of [defendant's] motion."); *United States v. Burton*, JFA-07-773, 2022 WL 17068799, at *6 (D.S.C. Nov. 17, 2022) ("[D]efendant's motion for compassionate release is denied to the extent it is based upon changes in sentencing laws because the changes the defendant points to have caused no disparity in the sentence the defendant received versus what he would receive today. Thus, the defendant has failed to state an extraordinary and compelling reason to warrant the relief sought."), *dismissing appeal for failure to prosecute,* 2023 WL 3750394 (4th Cir. Feb. 16, 2023).

The Fourth Circuit has made clear that "the proper vehicle to challenge the validity of a defendant's conviction or sentence is a 28 U.S.C. § 2255 motion to vacate, set aside, or correct a federal sentence, and a compassionate release motion filed for this purpose is foreclosed." *United States v. Boyd*, 2023 WL 7381548, at *5 (4th Cir. Nov. 8, 2023) (per curiam). More recently, the Supreme Court reiterated the same principle. *See Fernandez*, 146 S. Ct. at 1307. Notably, Blake has successfully availed himself of the proper procedure.

In order for U.S.S.G. § 1B1.13(b)(6) to apply here, Blake must demonstrate that: (1) he "received an unusually long sentence"; (2) he "has served at least 10 years" of that sentence; and

(3) a change in the law produces "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . . ."

In ECF 192, filed in October 2024, Blake claims he has been incarcerated "for 19 years." *Id.* at 3. He satisfies the second criterion. As to the first factor, I shall assume, *arguendo*, that the sentence is "unusually long." Even so, the question is whether Blake satisfies the third requirement: gross disparity.

Pursuant to 28 U.S.C. § 2255, the government and defendant previously agreed to recommend that the Court reduce Blake's sentence of life imprisonment plus ten years to a combined total of forty years of imprisonment. ECF 123-1 at 1; *see* ECF 123-1. Subsequently, the government and Blake again jointly moved this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A), to reduce Blake's total sentence to thirty years of imprisonment. ECF 165. Notably, Blake and the government expressly "agree[d] that a total sentence of 30 years in prison would satisfy the goals of sentencing under 18 U.S.C. § 3553(a)[.]" ECF 165 at 3. The Court granted that motion. ECF 167; ECF 168.

The statute governing carjacking resulting in death (Count One), 18 U.S.C. § 2119(3), carries a maximum sentence of life in prison, or punishment by death. The statute governing conspiracy to possess firearms in furtherance of a crime of violence (Count Two), 18 U.S.C. § 924(o), carries a maximum sentence of 20 years. The statute governing use and discharge of a firearm in relation to a crime of violence (Count Three), 18 U.S.C. § 924(c)(1)(A)(iii), carries a minimum sentence of ten years, consecutive, with a maximum of life. And, the statute governing murder as a result of possession and discharge of a firearm in furtherance of a crime of violence (Count Five), 18 U.S.C. § 924(j), carries a maximum sentence of life imprisonment, or punishment

by death. As discussed, I have determined to vacate and dismiss the conviction and sentence for Count Five.

In *Brown*, 78 F.4th 122, decided in 2023, *i.e.*, before *Rutherford*, 146 S. Ct. 1320, and *Fernandez*, 146 S. Ct. 1292, the Fourth Circuit stated that a defendant's disparate sentence "is relevant to both the 'extraordinary and compelling reasons' inquiry and the § 3553(a) factors." *Id.* at 130. In that case, the defendant was serving a 57-year sentence, which included a mandatory sentence of 30 years for two convictions under 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime). *Id.* at 124. The Court determined that the district court erred in its compassionate release analysis by failing to consider the defendant's disparate sentence. *Id.* at 124, 130–31. In the Court's view, two features of the sentence provided extraordinary and compelling reasons for relief: the sentence's "sheer and unusual length" in relation to sentences for more serious and violent crimes, and "the gross disparity between" the sentence "and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *Id.* at 131.

However, in light of *Rutherford*, 146 S. Ct. 1320, the viability of *Brown* is unclear. As noted earlier, *Rutherford* concerned the stacking requirement under § 924(c) for first-time offenders as it existed prior to the passage of the 2018 FSA, which changed the law but did not make the change retroactive. The defendants in *Rutherford* were sentenced before the change in the law, and received sentences far greater than what the current law would require. Even so, the Supreme Court concluded that the sentencing disparities created by the change in the law did not constitute a basis for compassionate release. *Id.* at 1330.

To put the length of Blake's sentence in context, I shall first review the mean and median[27] sentences imposed for certain crimes over the last three years: 2023, 2024, and 2025. Of course, a mean or median sentence does not mean that all sentences are that length. Instead, it charts the middle of a distribution of sentences. By its terms, it means that half the sentences are higher and half are lower. Of significance, for murder, sentences of 470 months or greater, even including life sentences, were inputted in the sentence average computations as sentences of 470 months, creating a ceiling for the sentence average. *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2025, District of Maryland*, U.S. SENT'G COMM'N, https://perma.cc/UBA6-337E.

Beginning with the year 2023, the mean and median terms for national sentences imposed for robbery were 110 and 96 months respectively, and 285 and 276 months for murder. *Table 15, "Sentence Imposed by Type of Crime,"* at 64, in *2023 Annual Report and Sourcebook of Federal Sentencing Statistics*, U.S. SENT'G COMM'N, https://perma.cc/4JQA-G7K7 ("2023 Sourcebook").[28] Looking at sentences in the Fourth Circuit in 2023, the mean and median

[27] Median and mean are two common measures for averages.

A median is "a value in an ordered set of values below and above which there is an equal number of values or which is the arithmetic mean of the two middle values if there is no one middle number[.]" *Median,* MERRIAM-WEBSTER DICTIONARY (last accessed July 22, 2026), https://perma.cc/JY5T-M94J.

A mean or arithmetic mean is "a value that is computed by dividing the sum of a set of terms by the number of terms[.]" *Arithmetic mean,* MERRIAM-WEBSTER DICTIONARY (last accessed July 22, 2026), https://perma.cc/GQ38-J7YA.

[28] The statistics involving robbery in the Sentencing Commission Sourcebook "include[] bank robbery, Hobbs Act robbery, post office robbery, other robbery, and *carjacking*." *2025 Sourcebook Federal Sentencing Statistics, Appendix A: Descriptions of Datafiles and Variables*, at 191, U.S. SENT'G COMM'N, https://perma.cc/DG3N-W7PP (last accessed Aug. 5, 2026) (emphasis added); *see 2024 Sourcebook Federal Sentencing Statistics, Appendix A: Descriptions of Datafiles and Variables*, at 189, U.S. SENT'G COMM'N, https://perma.cc/PNE9-2LK6 (last

sentences imposed for robbery were 140 and 125 months, respectively, and 295 months and 292 months for murder. *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2023, Fourth Circuit*, U.S. SENT'G COMM'N, https://perma.cc/8GZU-HYTV. And, in 2023, 20.3% of sentences issued for robbery offenses were increased if the offense involved carjacking. *QuickFacts, Robbery Offenses FY 2023,* U.S. SENT'G COMM'N, at 1, https://perma.cc/7XPZ-3FZY (last accessed Aug. 5, 2026).

In 2024, the respective mean and median national sentences imposed for robbery were 110 and 96 months, respectively, and 274 and 240 months for murder. *Table 15, "Sentence Imposed by Type of Crime,"* at 38, in *2024 Annual Report and Sourcebook of Federal Sentencing Statistics*, U.S. SENT'G COMM'N, https://perma.cc/J6ST-XCZA ("2024 Sourcebook"). For that same year, in the Fourth Circuit, the mean and median sentences for murder were 273 and 300 months and 130 and 120 months for robbery. *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2024, Fourth Circuit,* U.S. SENT'G COMM'N, https://perma.cc/F267-5LA9. In 2024, 19.9% of the sentences imposed for robbery offenses were increased if the offense involved carjacking. *QuickFacts, Robbery Offenses FY 2024,* U.S. SENT'G COMM'N, at 1, https://perma.cc/DM4Z-29M4 (last accessed Aug. 5, 2026).

For 2025, the mean and median national sentences imposed for robbery were 107 and 90 months, and for murder, they were 286 and 292 months. *Table 15, "Sentence Imposed by Type of Crime,"* at 38, in *2025 Annual Report and Sourcebook of Federal Sentencing Statistics*, U.S. SENT'G COMM'N, https://perma.cc/WEP9-X9L3 ("2025 Sourcebook"). In 2025, the Fourth Circuit mean and median sentences for murder were 292 and 288 months, and they were 129 and

---

accessed Aug. 5, 2026) (same); *2023 Sourcebook Federal Sentencing Statistics, Appendix A: Descriptions of Datafiles and Variables*, at 185, U.S. SENT'G COMM'N, https://perma.cc/L4FE-8Q8C (last accessed Aug. 5, 2026) (same).

120 months for robbery. *Table 7, "Sentence Length by Type of Crime,"* at 11, in *Statistical Information Packet, Fiscal Year 2025, Fourth Circuit,* U.S. SENT'G COMM'N, https://perma.cc/M678-V2NW. In 2025, 21% of the sentences issued for robbery offenses "were increased for carjacking[.]" *QuickFacts, Robbery Offenses FY 2025,* U.S. SENT'G COMM'N, at 1, https://perma.cc/8CXW-CWH5 (last accessed Aug. 5, 2026).

Convictions under 18 U.S.C. § 924(c) contain mandatory minimum sentences, "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law[.]" Because Blake's other convictions under 18 U.S.C. § 2119(3) and §§ 924(j) and (o) do not contain mandatory minimums, the mandatory minimum prescribed in subsection (c) applies. Because a firearm was discharged in the commission of the crime for which Blake was convicted, his conviction under 18 U.S.C. § 924(c) carries a mandatory minimum sentence of ten years. *See* 18 U.S.C. § 924(c)(1)(A)(iii). And, the sentence under section 924(c) must run consecutive to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii).

During Fiscal Year 2024, the average sentence for individuals convicted under § 924(c) was 150 months, or twelve and a half years. *Quick Facts: 18 U.S.C. § 924(c) Firearms Offenses,* U.S. SENT'G COMM'N (FY 2024), https://perma.cc/PFG4-JFN6.[29] During Fiscal Year 2023, the average sentence for individuals convicted under § 924(c) was 145 months, *i.e.*, approximately twelve years. *Quick Facts: 18 U.S.C. § 924(c) Firearms Offenses,* U.S. SENT'G COMM'N (FY 2023), https://perma.cc/7KKN-DVFB.

Defendant's sentence of 360 months (30 years) is a combined sentence, encompassing more than just murder. But, viewed in its totality, it falls slightly above current national averages for

[29] The U.S. Sentencing Commission has not issued data on the average sentence for individuals convicted under § 924(c) in fiscal year 2025.

murder. Nevertheless, even in the current sentencing climate, Blake's 30-years sentence is not an outlier.

Several cases in this District provide guidance. Notably, some of the defendants in the criminal cases addressed below pleaded guilty and thus, unlike Blake, they did not put the government, the witnesses, or the Court through the trial process. As a result, they appear to have been rewarded for their decisions to plead guilty. And, "some disparity is justified" between sentences imposed on defendants who plead guilty and those who go to trial, given that defendants who plead guilty have "spared the Government the expense of their own trial[.]" *United States v. Countess*, BAH-04-232, 2026 WL 482312, at *4 (D. Md. Feb. 20, 2026); *see United States v. Sutton,* 126 F.4th 869, 881 (4th Cir. 2025) ("We would generally expect defendants who plead guilty and cooperate to receive lower sentences than their counterparts who go to trial."), *cert. denied*, 145 S. Ct. 2764 (2025); *United States v. Fernandez*, 104 F.4th 420, 428 (2d Cir. 2024) ("[O]ur system of pleas often results in individuals who accept a plea bargain receiving shorter sentences than other individuals who are less morally culpable but take a chance and go to trial. And lower sentences for cooperating defendants are explicitly contemplated by the sentencing statute and the Sentencing Guidelines. Such practices are hardly most unusual, far from common, or with little or no precedent.") (cleaned up and citations omitted), *aff'd*, 146 S. Ct. 1292 (2026); *United States v. Batts*, 251 F. App'x 197, 201 (4th Cir. 2007) (per curiam) ("[S]imilarly situated defendants who go to trial typically receive longer sentences than those who plead guilty.").

In *United States v. Byers*, 649 F.3d 197 (4th Cir. 2011), defendants Byers and Goodman were convicted at trial in a case involving the murder-for-hire of a witness to a murder in a drug case. *Id.* In 2009, both defendants received life sentences. *Id.* at 206. A third defendant, Cornish, was the triggerman. He was only fifteen at the time of the murder. *Id.* at 204 n.3. Cornish entered

into a plea agreement that provided for a 40-year sentence. *Id.* The Fourth Circuit affirmed. *Byers,* 649 F.3d at 217.

Cornish subsequently moved for compassionate release. RDB-07-604, ECF 72. By Memorandum Order of February 7, 2024, 2024 WL 473807, Judge Bennett denied the motion. The Court noted that "it is not enough for Cornish to rely solely on his youth at the time of his underlying crime." *Id.* at *4. Moreover, in the Court's § 3553(a) analysis, Judge Bennett said that the defendant's rehabilitation "is outweighed by the seriousness of the crime." *Id.* at *5.

In *Countess*, 2026 WL 482312, the defendant was part of a murder for hire conspiracy. *Id.* at *1. When Countess was 25 years of age, he and a co-defendant "shot and killed" the victim "and later collected payment for their crime." *Id.* at *1. Countess was indicted on six charges related to the conspiracy and, in 2006, a jury convicted him on all counts. *Id.* He was sentenced to concurrent terms of life imprisonment for four counts, a term of 240 months' imprisonment on another count, and a consecutive sentence of 120 months' imprisonment for another count. *Id.* One of Countess's co-defendants was also convicted by a jury and sentenced to multiple life sentences. *Id.* But, "[t]wo of Countess's co-defendants accepted plea bargains and were sentenced to significantly shorter terms of imprisonment" than life. *Id.*[30]

In December 2024, the co-defendant who received a life sentence "successfully petitioned to have his sentence reduced to thirty-five (35) years by Judge Blake." *Id.*; *see United States v. Thomas,* CCB-04-232, 2024 WL 5239411 (D. Md. Dec. 27, 2024) (granting Countess's co-defendant's motion for compassionate release). That was a factor in Judge Hurson's consideration of a similar motion filed by Countess. *Countess,* 2026 WL 482312, at *1.

---

[30] In particular, one co-defendant received a sentence of 77 months of imprisonment, while another was sentenced to 64 months. *Countess,* 2026 WL 482312, at *3. Neither of these co-defendants actually killed the victim but both participated in the conspiracy. *Id.*

In evaluating Countess's motion, Judge Hurson observed: "The median sentence for murder in this District is 300 months, and the national average is even lower." *Id.* at *4. He also noted that a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process operates on defendants like Countess." *Id.* (quotation marks and citation omitted). Judge Hurson noted the disparity between the sentence Countess and his co-defendants were serving, and also found that "the difficult upbringing Countess endured and his relatively young age at the time of [the victim's] murder" further supported "a finding of extraordinary and compelling reasons supporting a reduced sentence." *Id.* at *5. Moreover, Countess had "taken significant steps to rehabilitate himself while in custody." *Id.* In light of these factors, Judge Hurson reduced Countess's life sentence to thirty-five years of incarceration. *Id.* at *6.

In *United States v. Warren, et al.*, JKB-22-439, a multi-defendant case, Warren was a member of a gang that engaged in "a pattern of racketeering activity that included conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, robbery and murder." *See id.*, ECF 271-1 at 1. Pursuant to a plea agreement (*id.*, ECF 271), Warren pleaded guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). *Id.* ¶ 1. The pattern of racketeering activity included a conspiracy that involved the attempt to murder five individuals. *Id.,* ECF 271-1 at 2. The parties agreed to a sentence of 396 months of imprisonment as the appropriate disposition of the case. *See id.* ¶ 10. But, the plea was not entered under Fed. R. Crim. P. 11(c)(1)(C).

At sentencing in 2024, the defendant was thirty-two years old. *Id.*, ECF 290 (PSR), at 3. Judge Bredar sentenced the defendant to a term of 467 months of imprisonment, *i.e.*, thirty-eight years and eleven months. *Id.*, ECF 292 (Judgment).

Several defendants were charged in *United States v. Whisonant, et al.*, ELH-17-191. Each pleaded guilty in 2021 to the offense of conspiracy to distribute heroin in violation of 21 U.S.C. § 846. *Id.*, ECF 71, ¶ 1; ECF 119, ¶ 1; ECF 123, ¶ 1; ECF 149, ¶ 1 (plea agreements). Three of the defendants also pleaded guilty to offenses involving firearms. *Id.*, ECF 119, ¶ 1; ECF 123, ¶ 1; ECF 149, ¶ 1. In particular, Whisonant pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *Id.*, ECF 149, ¶ 1. Two other defendants pled guilty to discharging a firearm resulting in death, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and (j). *Id.*, ECF 119, ¶ 1; ECF 123, ¶ 1. The murder was unexpectedly captured, in real time, during an authorized wiretap. *Id.*, ECF 152 at 2.

In 2018, Whisonant received a total sentence of 360 months of imprisonment (*id.*, ECF 180), and the shooters received sentences of imprisonment of 420 months (*id.*, ECF 163) and 480 months. *See id.*, ECF 184. Whisonant's sentence was subsequently reduced to 295 months, *i.e.*, almost 25 years, by Order of June 26, 2023, pursuant to § 3582(c)(1)(A)(i). *See id.,* ECF 335; *see also* ECF 334 at 38 (noting that Whisonant was not the shooter).

*United States v. Johnson*, LKG-16-267, is also instructive. In 2018, the court sentenced the shooter to thirty years in regard to multiple murders, pursuant to a plea agreement (*id.*, ECF 897) entered under Fed. R. Crim. P. 11(c)(1)(C). *Id.*, ¶ 1; ECF 953 (Judgment). The defendant later sought compassionate release. *Id.,* ECF 1819. By Memorandum Opinion and Order of July 24, 2025, the court denied defendant's motion, finding, *inter alia*, that he had not identified an extraordinary and compelling reason for compassionate release. *Id.*, 2025 WL 2085018, at *5 (D. Md. July 24, 2025). Judge Griggsby concluded that the sentence fell within the range of comparable sentences in the Fourth Circuit, given "that approximately 44% of those sentenced

under those parameters received a sentence of 30 years or more, with 32.8% receiving a sentence of life in prison." *Id*. at *7.

In *United States v. Floyd*, CCB-16-597, Floyd was one of several defendants convicted in 2018 after a 25-day trial. *See id*., ECF 477; ECF 491. In particular, he was convicted of racketeering conspiracy that included murders and drug conspiracy. However, Floyd was not the shooter. Although the defendant's offense level and criminal history category called for a life sentence, Judge Blake imposed a total sentence of 360 months of imprisonment, *i.e.*, 30 years. *Id.*, ECF 691 (Judgment).

*United States v. Barron*, JKB-23-301, is a multi-defendant case. Jerritt Barron, Jeremy Matheny, Antonio Purisima, and Nefertiti Moore were indicted on August 29, 2023, for crimes stemming from a series of armed carjackings that took place during an eight-day period in June 2022. ECF 1. One of the attempted carjackings culminated in murder. Barron, Matheny, Purisima, and Moore pleaded guilty to one count of carjacking resulting in death, in violation of 18 U.S.C. § 2119(3). *Id.*, ECF 122 (Barron Plea Agreement) at 1; *id.,* ECF 126 (Matheny Plea Agreement) at 1; *id.,* ECF 134 (Purisima Plea Agreement) at 1; ECF 196 (Moore Plea Agreement) at 1.

In Barron's plea agreement, he stipulated that he and his co-conspirators committed four armed carjackings and attempted to commit two more in June 2022. *Id.*, ECF 122 (Barron Plea Agreement), at 10–11. Barron also stipulated "that he and/or his co-defendants possessed and brandished firearms during and in relation to the carjackings[.]" *Id.* In particular, Barron stipulated that he, Matheny, Purisima, and Moore stopped the murder victim's vehicle from entering a ramp to an interstate; Barron and Purisima approached the victim's car; and the "victim was then shot and died from the injuries." *Id.* at 10. Matheney "remained in the defendants' vehicle." *Id.* After

the murder, the group, without Purisima, committed three more armed carjackings and attempted a fourth, during which one of the defendants discharged a firearm. *Id.,* ECF 122 at 11.

The plea agreements did not identify the individual who pulled the trigger. *See id.*; ECF 126 at 10; ECF 134 at 10. But, at Matheny's sentencing, both the government and Mr. Matheny's counsel acknowledged that Mr. Matheny "is not an individual that is accused in any of the incidents of being a trigger-puller." *Id.*, ECF 177 (Transcript of Matheny Sentencing), at 16; *see id.* at 10.

Pursuant to the Barron Plea Agreement, the parties jointly recommended a sentence of 420 months, concurrent with sentences imposed by a Maryland court. *Id.* at 6.[31] Pursuant to the Matheny Plea Agreement, the parties jointly recommended a sentence of 264 months' imprisonment. *Id.,* ECF 126 at 6. Pursuant to the Purisima Plea Agreement, the parties jointly recommended a sentence of 360 months incarceration. *Id.,* ECF 134 at 6. The parties did not agree to a joint recommendation under Mr. Moore's Plea Agreement. *Id.*, ECF 196.

Judge Bredar sentenced Barron and Matheny on May 28, 2026. *Id.,* ECF 153; ECF 154. Barron was twenty years of age when the carjackings took place and twenty-four at the time of sentencing. *See id.,* ECF 141 at 2. Matheny was between the ages of twenty-three and twenty-four when the carjackings occurred and twenty-seven at the time of sentencing. *Id.,* ECF 143. He

[31] The government explained that it suggested a higher sentence for Barron because its "investigation revealed that [Barron] was the leader of the group and the organizer[.]" *Barron*, ECF 177 at 13.

At Mr. Matheny's sentencing, the government claimed that it did not "have any evidence to suggest that Mr. Matheny knew that Barron or Purisima were going to pull the trigger and kill the victim on the night of the murder." *Id.* at 9. The government noted that Mr. Matheny's "role in the carjacking, particularly the murder, was just lesser than of course Barron and Purisima[.]" *Id.* at 10. The government described Mr. Matheny as "the getaway driver" in the carjacking that resulted in murder. *Id.* at 11.

sentenced Matheny to 288 months of incarceration. *Id.,* ECF 155 at 2. And, he sentenced Barron to 480 months, concurrent with three Maryland State sentences. *Id.,* ECF 157 at 2.

Purisima was twenty-six years old at sentencing on July 28, 2026, but twenty-one when the carjackings took place. ECF 190; ECF 162 (Purisima Presentence Report), at 2. Judge Bredar sentenced Purisima to a term of 420 months of incarceration, concurrent with a Maryland State sentence. *Id.,* ECF 191 at 2.[32]

In *United States v. Kearney*, 837 F. App'x 975 (4th Cir. 2020), the defendant, who was in the Army, lived apart from his wife. In August 2015, he drove from South Carolina to Maryland, where he shot and killed his wife. *Id.* at 977. The defendant and his mistress hatched the plot to murder the defendant's wife, and both were subsequently indicted. *Id.* The defendant was charged with interstate travel to commit domestic violence resulting in death, in violation of 18 U.S.C. § 2261(a)(1), and discharge of a firearm in relation to a crime of violence, resulting in death, in violation of 18 U.S.C.§ 924(c) and (j). *Id.*

The mistress pleaded guilty. *Id.* But, the defendant went to trial, and the jury found him guilty of both charges. *Id.* at 977–78. In November 2018, Judge Russell sentenced the defendant to life in prison as to count one and to a consecutive term of 120 months as to count two, for a total term of life plus ten years. *Id.* at 978; *see United States v. Kearney*, GLR-16-00486, ECF 161, ECF 162 (Judgment). The judgment was affirmed by the Fourth Circuit. *Id.* at ECF 208, ECF 209; *see Kearney*, 837 F. App'x at 978; *see also United States v. Kearney*, 2024 WL 446417 (4th Cir. Feb. 6, 2024) (per curiam) (dismissing appeal of denial of post-conviction petition under 28 U.S.C. § 2255).

[32] Purisima has noted an appeal to the Fourth Circuit. *Id.,* ECF 199.

*United States v. Hall*, RDB-02-00030, 2026 WL 1782056 (D. Md. June 22, 2026), is also noteworthy. There, the defendant was sentenced in 2002 to "three concurrent life sentences after pleading guilty to three counts of carjacking resulting in death[.]" *Id.* at *1. In particular, Hall "committed a carjacking of an unlicensed cab driver, Matthew Kenney, in which he ordered Mr. Kenney, at gunpoint, to drive into a wooded area. Once there, Mr. Hall killed Mr. Kenney and took his car." *Id.* Nine days later, defendant "committed the same crime against two other unlicensed cab drivers[.]" *Id.*

In 2023, Hall moved for compassionate release. *Id.* Judge Bennett determined that Hall was "not entitled to a sentence reduction[.]" *Id.* at *3. In particular, Judge Bennett observed that Hall's crimes were "extremely serious . . . committed in cold blood," and he stated that "the need to provide deterrence and just punishment, and the need to provide restitution to the victims all counsel against relief." *Id.* Additionally, the court concluded that "Mr. Hall has presented no post-sentencing mitigation evidence that would support a reduction in sentence[.]" *Id.*

Other cases are also noteworthy. *See*, *e.g.*, *Thomas*, 2024 WL 5239411, at *1 (reducing a life sentence to 35 years for a murder for hire where the defendant was the triggerman); *United States v. Kirkland*, ELH-94-010, 2024 WL 4529303, at *1, *8 (D. Md. Oct. 18, 2024) (reducing a life sentence to 40 years where the defendant, 25 years of age at sentencing, and 55 at the time of the ruling, had aided and abetted the murder of a federal witness by identifying the victim); *United States v. Addison*, CCB-98-0210, 2024 WL 5202243, at *1 (D. Md. Dec. 23, 2024) (reducing multiple life sentences to 35 years for a defendant who had ordered murders in furtherance of a drug conspiracy); *United States v. Savoy*, JKB-05-00415, 2024 WL 3091125, at *1 (D. Md. June 21, 2024) (reducing a life sentence to 30 years for the defendant's non-fatal shooting of a police officer during a night club brawl).

In sum, defendant's sentence of 360 months is certainly not outside the norm. *Compare*, *e.g.*, *United States v. Gilchrist*, DKC-02-245, 2025 WL 388328 (D. Md. Feb. 4, 2025) (granting in part and denying in part defendant's motion for compassionate release; reducing defendant's sentence for multiple armed robberies and a carjacking that did not result in death from 112 years to 37 years), *aff'd,* 2025 WL 3553025 (4th Cir. Dec. 11, 2025); *United States v. Spriggs*, ELH-09-0361, 2024 WL 5186703 (D. Md. Dec. 20, 2024) (granting defendant's motion for compassionate release for an armed carjacking that did not result in murder, reducing defendant's sentence from 444 months to 300 months, *i.e.*, 25 years); *United States v. Tyler-El*, DLB-19-353, 2024 WL 1416611 (D. Md. Apr. 2, 2024) (denying defendant's motion for compassionate release as to a sentence of 150 months of imprisonment for a series of armed robberies and carjacking); *United States v. Foster*, CCB-02-0410-1, 2023 WL 4407595 (D. Md. July 7, 2023) (granting defendant's motion for compassionate release, reducing defendant's sentence from life to thirty-two years for conspiracy to distribute crack cocaine, witness tampering, carjacking, and brandishing a firearm in furtherance of a drug trafficking crime and a crime of violence).

There is no shortage of other cases that pertain to sentences in murder cases. Indeed, in 2021, Blake's counsel cited several cases, including one authored by this Court, in urging the Court to grant the compassionate release motion. *See* ECF 149 at 12–16. Defendant's current 30-year sentence does not reflect the "sheer and unusual length" of the sentence the Fourth Circuit described in *Brown*, 78 F.4th 122 at 131. Nor is there a disparity between Mr. Blake's 30-year sentence and the sentence he would likely receive if sentenced today, particularly after electing to proceed to trial. Indeed, a defendant who proceeds to trial and is convicted of murder in the course of an armed carjacking could readily receive a sentence far greater than thirty years.

The circumstances do not persuade the Court that a further sentence reduction is warranted. In sum, Mr. Blake has not shown that a sentencing disparity provides an "extraordinary and compelling reason" to reduce his sentence under § 3582(c)(1)(A).

**2. Family Circumstances**

Blake's mother submitted a letter to the Court in support of her son's Motion. ECF 192-7. The letter is not dated, but it was docketed on October 21, 2024. *Id.* She claims that she was "diagnosed with lupus" in 2010, and began experiencing "real bad symptoms" in 2023. *Id.* She also claims that she has been hospitalized because of her illness. *Id.* Further, she states: "I would like to explore the possibility of having my son live at home to provide care for me, given my current health situation." *Id.*

Thereafter, on August 18, 2025, Blake wrote to the Court, seeking to amend his Motion based on "the change in circumstances pertaining to [his] mother's health." ECF 195. He claimed that he had "been waiting for a month for" his "mother's medical records along with notarized letters from" his siblings that he could append to his Motion. *Id.* But, since then, Blake has not provided the Court with his mother's medical records. *See* Docket.

An exhibit appended to defendant's Motion to Vacate reflects that Blake wrote to his former counsel, Shari Derrow, on January 21, 2024, stating that his mother was "on her way to the hospital, because she's having pain in her mouth." ECF 183-2 at 1. Of relevance, Blake also indicated that his sister was taking his mother to the hospital. *Id.* He said, in part, *id:*

> I'm not sure how much longer my mother may be around. i say that because i can see the difference and the change in her appearance, she has lost a lot of weight and her lupus has been flaring up consistently . . .

In its Opposition, the government did not address Blake's request for compassionate release due to his mother's health. *See* ECF 189.

U.S.S.G. § 1B1.13(b) is titled "FAMILY CIRCUMSTANCES OF THE DEFENDANT." Section 1B1.13(b)(3)(C) provides for an extraordinary and compelling reason based on "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." Under this section, courts examine: (1) the parent's incapacitation; and (2) whether the defendant is the only available caregiver. *United States v. Villar*, LAH-16-340, 2024 WL 2939018, at *3 (N.D. Ill. June 11, 2024).

Notably, "incapacitation" is a high bar. The BOP has defined incapacitation narrowly, *i.e.*, when the family member (1) has "[s]uffered a serious injury, or a debilitating physical illness" such that the family member "is completely disabled, meaning that the [family member] cannot carry on any self-care and is totally confined to a bed or chair," or (2) has "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the [family member's] mental capacity or function), but may not be confined to a bed or chair." Fed. Bureau of Prisons, Program Statement 5050.50 at 10 (2019) https://www.bop.gov/policy/progstat/5050_050_EN.pdf (alterations added). Similarly, "[c]ourts have interpreted incapacitation in this context to mean that the individual is 'completely disabled' and 'cannot carry on any self-care' or 'is totally confined to a bed or chair.'" *United States v. Howard*, NJR-21-30187-1, 2025 WL 1684262, at *2 (S.D. Ill. June 16, 2025) (collecting cases); *see United States v. Gross*, HAB-17-37, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024); *United States v. Steele*, DRC-20-13-14, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024).

Therefore, an individual does not qualify as incapacitated when the medical conditions impact daily life but do not severely impede functionality. *See United States v. Dewalt*, CCE-20-78, 2025 WL 3213875, at *3 (M.D.N.C. Nov. 18, 2025) ("The case law is consistent that evidence of an elderly parent with health issues is not sufficient to show incapacitation."); *United*

*States v. Swarn*, JRT-20-118, 2025 WL 2306990, at *2 (D. Minn. Aug. 11, 2025) (finding no incapacitation because medical records "contain no indication that [defendant's] mother is bedridden, chair-bound, or suffering from cognitive decline." ); *United States v. Stayton*, LCB-19-255-1, 2025 WL 1359805, at *3 (M.D.N.C. May 9, 2025) (finding that "the mere existence of a parent being elderly and who has general health issues does not demonstrate incapacitation."); *United States v. Vaughn*, MFU-10-17, 2025 WL 84215, at *6 (W.D. Va. Jan. 13, 2025) ("The court is sympathetic to Vaughn's desire to care for his mother, but the evidence submitted does not show that her medical conditions are so dire that she has become incapacitated."); *United States v. Bass*, RLW-19-35, 2024 WL 3552030, at *3 (E.D. Mo. July 26, 2024) (finding that defendant's evidence that his father been diagnosed with stage II prostate cancer and was "too weak to work", failed to establish that his father was incapacitated); *United States v. Armstrong*, TDC-16-0601, 2024 WL 1096621, at *2 (D. Md. Mar. 13, 2024) (no showing of incapacitation based only on the allegation that a parent suffered from heart disease and required regular assistance). Furthermore, "general claims" from a defendant's mother "that it would be helpful for her son to take care of her and cook and clean for her do not suffice to demonstrate incapacity." *Gross*, 2024 WL 4100325, at *3; *see United States v. Wendel*, JJH-19-219, 2024 WL 2748493, at *2 (N.D. Ohio May 29, 2024) ("Ms. Wendel's general assertion she is unable to 'manage her home' is not sufficient to demonstrate that she is incapacitated.").

Generally, courts require a defendant to provide specific evidence establishing incapacitation. *See*, *e.g.*, *United States v. Zermeno*, MAC-16-79, 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) ("Noticeably lacking from Zermeno's documentation is any indication that [his mother] is incapacitated in that she suffers from a serious injury or debilitating physical illness that renders her completely disabled or that she suffers from a severe cognitive deficit.") (alteration

added); *Villar*, 2024 WL 2939018, at *4 (finding insufficient evidence in the record of defendant's parent's incapacitation because their doctors failed to opine about their limitations); *United States v. Romano*, KAM-22-12, 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023) (finding the defendant's failure to attach any medical evidence or opinions or similarly competent evidence rendered "the Court unable to make the necessary factual findings"); *United States v. Yarbrough*, MRH-06-00203, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023) (denying compassionate relief because defendant "does not provide his mother's medical records, or records of any sort, so as to demonstrate her incapacitation.").

The case of *United States v. Stamper*, FDW-20-00295, 2024 WL 3512807 (W.D.N.C. July 23, 2024), is instructive. There, the defendant's mother lived alone and had hearing loss, vision loss, stents, and "suffer[ed] from the beginning stages of Alzheimer's." *Id.* at *5. She also had a history of falls." *Id.* A letter from the defendant's mother corroborated her health issues and requested the defendant's assistance. However, the court ruled that the defendant had not established his mother's incapacity, stating *id.*: "While the Court does not deny his mother's health concerns as legitimate, and empathizes with her difficulties, Defendant does not provide additional verifiable medical documentation establishing his mother is incapacitated and in need of a full-time caregiver." Furthermore, the court noted that although the "mother's conditions may worsen and eventually need full-time care, she currently is not incapable of caring for herself." *Id.*

Blake's claims as to his mother's health are based solely on his own assertions and his mother's letter to the Court. *See* ECF 192-7; ECF 195. I have no reason to doubt the illness that has been alleged. No medical records have been submitted, however.

Critically, the allegations, even if true, do not establish incapacitation. The existence of a medical condition does not automatically amount to incapacity. *See United States v. Bartlett*,

HAB-14-14, 2025 WL 1272136, at *3 (N.D. Ind. May 1, 2025) (finding no incapacitation despite documented medical conditions because "nothing in [defendant's] motion suggests, much less demonstrates, that [his mother] cannot . . . provide self-care. To the contrary, it appears that she is doing just that as [defendant]'s motion notes that she 'lives alone.'") (alterations added).

Nor has defendant established that he is the sole caregiver for his mother. *See* ECF 192-7; ECF 195. In his correspondence, Blake references letters from his siblings. ECF 195 at 1.[33] As noted, he also reported in an email to his attorney on January 21, 2024, that his sister was taking his mother to the hospital. ECF 183-2 at 1.

When a defendant relies on a sole-caregiver argument, "courts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Abayev*, JPC-22-655, 2025 WL 1739789, at *5 (S.D.N.Y. June 24, 2025); *see United States v. Ruiz-Patozano*, JGK-20-686, 2025 WL 3136595, at *2 (S.D.N.Y. Nov. 10, 2025); *United States v. Doe*, JAW-17-00091-1, 2024 WL 4751731, at *12 (D. Me. Nov. 12, 2024); *United States v. Christopher*, JPC-22-61, 2024 WL 4707909, at *4 (S.D.N.Y. Nov. 7, 2024); *Gross*, 2024 WL 4100325, at *3; *see also United States v. Figueroa-Gibson*, RAM-16-802, 2024 WL 376432, at *6 (D.P.R. Jan. 31, 2024) (finding that although defendant claimed geographic distance and mental infirmity of family members, without "more evidence as to these challenges, the Court cannot find that these other family members are unable to provide adequate care."); *United States v. Striganivicz*, Y-95-271, 2023 WL 4868100, at *1 (E.D. Pa. July 31, 2023)

[33] According to the PSR, Blake has three half-siblings, all of whom lived in Maryland at the time of Blake's sentencing. ECF 170, ¶ 67. The PSR does not indicate whether they are paternal or maternal half-siblings. Presumably, only maternal siblings would be of assistance to defendant's mother. But, at least one sibling was assisting defendant's mother. *See* ECF 183-2.

(explaining that courts have "denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the sole individual capable of caring for the parent.") (cleaned up).

The Court understands defendant's desire to be available to assist his mother. Nonetheless, I must construe the words of the Guidelines in accordance with their ordinary meaning. *See United States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021). In my view, defendant has failed to establish an extraordinary and compelling reason for his release, grounded in U.S.S.G. § 1B1.13(b)(3)(C).

**3. The § 3553(a) Factors**

Even assuming, *arguendo*, that defendant established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry. The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

In my view, a balancing of the § 3553(a) factors leads to the conclusion that a further reduction in sentence is not warranted.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-

sentencing conduct because it "provides the most up-to-date picture" of a defendant's "'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh the [defendant's] conduct in the years since the[ ] initial sentencing[ ]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 F. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 F. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). Indeed, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (per curiam). But, rehabilitation on its own is not an extraordinary or compelling reason to reduce a sentence. U.S.S.G. § 1B1.13(b)((6); *Davis*, 2022 WL 127900, at *1.

Without question, Blake has shown consistent efforts towards rehabilitation. *See* ECF 208 at 3–4. He has obtained his GED and has "completed the core program for HVAC[.]" ECF 173 at 2. He has also completed an apprenticeship for the occupation of housekeeper. ECF 192-3.

And, Blake has completed nearly fifty education courses. ECF 192-4 at 1–2. In addition, Blake recently informed the Court that he has been accepted to the Global Leadership Academy, "a weekly, resident-driven leadership program . . . ." ECF 211. Further, Blake asserts that he "has never received any incident reports." ECF 173 at 2. According to the recidivism risk assessments Blake has submitted, Blake's security level is "low." ECF 192-5 at 2; ECF 203-1 at 1.

Blake also provides multiple Positive Decision Reports authored by staff members at Fort Dix FCI. *See, e.g.,* ECF 173-2; *see* ECF 173 at 2. In these reports, teachers and supervisors of Mr. Blake address his rehabilitative efforts. For example, in a Positive Decision Report dated December 15, 2023, a reporting employee, J. Gerety, described Blake's work as the head orderly in the Education program. ECF 173-2. Gerety observed that Blake goes "above and beyond what he is asked of." *Id.* at 1. Gerety also asserts that Blake "selflessly volunteers for additional duties" and does "whatever he can to better himself." *Id.* And, Gerety notes his belief that Blake "will be an asset to society" and "treats staff and fellow inmates with respect and professionalism" and is "a great role model to his peers." *Id.*

In a Positive Decision Report dated October 4, 2024, literacy and postsecondary education coordinator C. A. Smith attested to Blake's character and conduct on the East Education orderly detail. Smith notes that Blake "is employed full time as an orderly." ECF 192-1 at 2. He describes Blake as committed to make "a hospitable, sanitary, and safe environment for learning." *Id.* Further, Smith asserts that Blake "has shown commitment to self-reflection," he has never "made excuses for prior behavior," and "recognizes the impact of his choices and the consequences that he faces because of them." *Id.* at 3. Smith stated: "Mr. Blake carries himself the way we would hope that those in our communities will." *Id.*

In a Positive Decision Report dated October 10, 2024, GED teacher S. Metzler wrote to "explain in detail" Blake's character. ECF 192-2 at 2. Metzler described Blake as "extremely respectful to staff," and recounted how Blake "leads a work detail of five orderlies with grace, patience, and organization." *Id.*

Moreover, Blake provided the Court with a letter he wrote to the Griffin family, in which he apologizes "for causing" the Griffin family "so much pain." ECF 192-9. In other submissions to the Court, Blake has expressed remorse for his actions and for the pain he inflicted on the Griffin family and members of his own family. ECF 203. The Court considers this remorse as an indicator of defendant's effort to rehabilitate himself, which is laudable.

Defendant appears to be a model prisoner, and I commend him for his commitment to rehabilitation. Blake's continued efforts to improve himself are, indeed, impressive. But, such information is not new. As the government claims, "defendant's current rehabilitation does not establish an extraordinary and compelling reason for a sentencing reduction, particularly given that the Defendant has already received a reduction of sentence based on rehabilitation." ECF 189 at 7.

Indeed, defendant's accomplishments, his efforts toward rehabilitation, his remorse, and his youth when the crimes occurred, were among the reasons for which defendant's sentence was substantially reduced. In lieu of the original sentence of life imprisonment plus ten years, I first reduced the total sentence to forty years. Then, I further reduced defendant's sentence to a total term of thirty years of imprisonment, again taking into account all of these factors.

As discussed, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *Davis*, 2022 WL 127900, at *1 (citing *McCoy*, 981 F.3d at 286 n.9); *see* § 994(t); *see also United States v. Johnson*, DCN-07-0924-3, 2022 WL 1409974, at *3 (D.S.C.

May 4, 2022) ("[T]o the extent [defendant] argues that his continued exemplary behavior warrants another reduction in his sentence, the court notes that its prior resentencing weighed his years of positive behavior against other factors . . . . Any continued rehabilitative efforts since the court issued its order are certainly commendable, but they do not alter the court's calculus [regarding reducing defendant's sentence]."); *United States v. Bryant*, NKM-04-00047-01, 2022 WL 1094731, at *4 (W.D. Va. Apr. 12, 2022) (concluding that the court will not consider the defendant's contentions that he has "accepted responsibility and shown good behavior, and that further punishment would be unnecessary," because "the Court already took those factors into consideration in its initial reduction of [defendant's] sentence[.]").

### 4. Conclusion

Blake participated in a carjacking that culminated in a brutal murder. It is difficult to overlook the cold-blooded nature of the shooting of the victim in the head. ECF 123-1 at 5. As Blake acknowledges, the actions he took are "the reason why Mr. Straughan Lee Griffin is no longer among us[.]" ECF 203 at 2. And, as Blake notes in his letter to the Court (ECF 203), because of his actions, the Griffin family has been forever robbed of a beloved family member. *Id.* at 1.

To be sure, Blake has made every effort to rehabilitate himself. And, he has been rewarded accordingly. But, as I see it, a further sentence reduction would not promote respect for the law.[34]

---

[34] I pause to note that Blake's 30-year sentence was one to which he agreed, on advice of counsel. ECF 123-1; ECF 165. Defendant also agreed not to file any additional motions to modify his sentence. *See* ECF 123-1, ¶ 7(e).

In an exhibit submitted by defendant, he told his former attorney, Shari Derrow, on January 13, 2024: "I recognize I pled and waived my right to contest the sentence further." ECF 183-1. Nevertheless, he wanted to know if his "last sentence runs afoul of the holdings in Ortiz and Lora." *Id.* Ms. Derrow responded, stating: "I am not aware of any basis to challenge your convictions at this time . . . ." ECF 183-2 at 1. In another email, also on January 22, 2024, Ms. Derrow said, *id.*:

For the reasons stated, I shall deny defendant's Motion (ECF 173). I shall grant defendant’s Motion to Vacate (ECF 175) as to Count Five, thereby vacating and dismissing the conviction and sentence for the offense under 18 U.S.C. § 924(j). And, I shall deny the Counsel Motion (ECF 205).

An Order follows.

Date: October 29, 2026

/s/
Ellen Lipton Hollander
United States District Judge

---

“I really wish there was something else I can do, but unfortunately, at this point, I do not believe there is any other basis to challenge your conviction or sentence.

To be clear, defendant’s waiver does *not* constitute a basis on which my ruling is founded. Therefore, I need not determine the enforceability of the provision in ECF 123-1. But, I note the waiver for historical context.